FILED
United States Court of Appeals
Tenth Circuit

December 26, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JOE RAKES,

     Defendant-Appellant.

No. 06-4208

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:05-CR-131-TS)**

---

Jeremy M. Delicino, Salt Lake City, Utah, for Defendant-Appellant.

Jack B. Haycock, Assistant United States Attorney (Thomas E. Moss, United States Attorney, with him on the brief), Pocatello, Idaho, for Plaintiff-Appellee.

---

Before **LUCERO, BALDOCK,** and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

     Joe Rakes challenges his conviction and resulting sentence arising from an alleged conspiracy to impede the investigation and prosecution of a white supremacy group, the Soldiers of Aryan Culture. Specifically, he argues that (1) the evidence presented at trial was insufficient to establish a conspiracy

between him and another participant in the alleged scheme; (2) the district court improperly rejected his plea agreement based on an undisclosed victim impact letter; and (3) the district court applied the wrong provision of the United States Sentencing Guidelines ("Guidelines") in calculating his sentence. While none of these arguments is without force, we ultimately conclude that none merits reversal under our governing standards of review.

I

A

In March 2004, an Assistant United States Attorney for the District of Utah in Salt Lake City received a threatening letter stating, "You stupid bitch! It is because of you that my brothers are in jail for the Rico. I know you live on the [street name redacted]. We will get you. til the casket drops." The letter apparently referred to an ongoing racketeering prosecution under the Racketeer Influenced and Corrupt Organization Act ("RICO") that the victim prosecutor was pursuing against members of the Soldiers of Aryan Culture. As a result of the letter, the prosecutor moved out of her home for a month, was assigned a United States Marshals detail to protect her for a time, and was eventually removed from the prosecution in question.

The Federal Bureau of Investigation's subsequent investigation of the letter led to a woman named April Dowding, a friend of two of the RICO defendants who was known to refer to them as her brothers. Ms. Dowding

identified Mr. Rakes as being involved in writing or mailing the threatening letter, as did other witnesses, including Laura Scott and Doug Errett.

The government indicted Mr. Rakes in March 2005 in the District of Utah on two counts:  mailing a threatening communication, 18 U.S.C. § 876, and conspiring to impede or injure an officer, 18 U.S.C. § 372.  After initially pleading not guilty, Mr. Rakes agreed to enter a plea of guilty to the lesser offense misprision of a felony, 18 U.S.C. § 4, in exchange for an agreement from the government that the appropriate sentence was 9 months imprisonment, below the 18 to 24 months suggested by Section 2X4.1 of the advisory Guidelines.  *See* Fed. R. Crim. P. 11(c)(1)(C).  The court conditionally accepted the change of plea, subject to its receipt of a presentence report and subsequent sentencing hearing.

Prior to sentencing, the district court received a victim impact letter, *see* 18 U.S.C. § 3771(a)(4), from the victim prosecutor but did not disclose the existence of the letter either to defense counsel or counsel for the government. At sentencing, the district court opened the proceeding by expressing doubt about the parties' recommended sentence of nine months, remarking that it would like them to explain how such a sentence would be justifiable even though it represented only half what the advisory Guidelines recommended as a minimum sentence.  After argument, the district court, apparently seeing no convincing reason for a below-Guidelines sentence, reversed its prior

conditional approval of the plea agreement, indicated its belief that a more substantial sentence was merited, and explained that it was concerned with

> the very real victim impact presented by this case. This is a serious matter. The impact on a respected Assistant U.S. Attorney in her role as an Assistant U.S. Attorney is very real. Furthermore, the impact on her as an individual, on her family is very real. And the Court is concerned about the message that might be sent if this matter is not properly punished.

R. III at 10-11. With the plea agreement's recommended sentence rejected, the district court advised Mr. Rakes of his right to withdraw his guilty plea and proceed to trial, *see* Fed. R. Crim. P. 11(c)(5), a right Mr. Rakes decided to exercise.

B

At trial, Ms. Dowding, the government's primary witness, testified that the threatening letter was created in Mr. Rakes's apartment but otherwise offered contradictory factual scenarios concerning its genesis, stating variously that (1) Mr. Rakes threatened her into writing the letter; (2) she could have been threatened by someone else or the voices in her head; and (3) she wrote the letter willingly, with the help of Mr. Rakes or at his suggestion, because she was upset about the treatment of her "brothers" in the white supremacy group who were charged in the RICO case and were in jail.

Laura Scott was similarly equivocal in recalling her own involvement with the letter. She did testify, however, that she was a friend of Mr. Rakes

- 4 -

and, at his direction and borrowing his car, went to the library to look up the address of the victim prosecutor. Ms. Scott brought the information back to Mr. Rakes at his apartment, where she saw Ms. Dowding was writing and had paper and envelopes.

Doug Errett testified that he was also a friend of Mr. Rakes, having known him in prison where they were both members of the Fourth Reich, a white supremacist prison gang. Mr. Errett stated that in February 2004 he was at Mr. Rakes's residence with Mr. Rakes and Ms. Dowding, where he saw the letter in question. At that time Mr. Rakes told him he and Ms. Dowding had written the letter to the prosecutor on the Soldiers of Aryan Culture case.

At the close of the government's case, Mr. Rakes moved for acquittal on both counts, *see* Fed. R. Crim. P. 29, which the district court granted as to Count I, mailing a threatening communication, but denied as to Count II, conspiring to impede or injure an officer. The jury thereafter found Mr. Rakes guilty of the surviving count, and the district court denied his renewed Rule 29 motion. Before sentencing, Mr. Rakes filed a motion for disclosure of any victim impact statements pursuant to Rule 32 of the Federal Rules of Criminal Procedure, which the district court granted, providing both parties the letter it had received from the victim prosecutor. Because the district court had not disclosed the letter at the plea agreement stage, Mr. Rakes moved the district

court to reconsider the plea agreement and recuse itself so another judge could handle the inquiry. The district court denied the motion.

In preparing its presentence report, the probation office encountered a different sort of complication. Because Mr. Rakes's offense, conspiracy to impede or injure an officer, 18 U.S.C. § 372, does not have an assigned Sentencing Guidelines section, the probation office was required to analogize to another Guidelines section and ultimately chose to employ Section 2A6.1(a)(1), which covers certain crimes involving threatening or harassing communications and has a base offense level of 12. Mr. Rakes objected, arguing that the most analogous guideline was Section 2A2.4, relating to obstructing or impeding a law enforcement officer, with a base offense level of 10. The district court overruled Mr. Rakes's objection and, employing Section 2A6.1(a)(1), sentenced Mr. Rakes to 63 months imprisonment.[1]

## II

On appeal, Mr. Rakes first contends that the government presented insufficient evidence at trial on an essential element of his crime – namely, the existence of an agreement between him and another person to prevent the victim from discharging her duties by the use of force, violence, or

---

[1] Mr. Rakes was not prosecuted for the offense that was the subject of his rejected plea agreement, misprision of a felony. Misprision of a felony is a lesser offense than conspiracy to impede or injure an officer, hence its more modest recommended sentencing range of 18 to 24 months imprisonment.

intimidation. In assessing such sufficiency challenges, we review the evidence presented *de novo*, asking whether, viewing it in the light most favorable to the government, as the prevailing party, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In so doing, we do not weigh conflicting evidence or credibility, but ask only whether the government's evidence, credited as true, would establish the elements of the crime. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004). While our standard of review is deferential to be sure, we will not uphold a conviction obtained by piling inference upon inference, and the evidence supporting a conviction must do more than raise a mere suspicion of guilt. *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262-63 (10th Cir. 1998).

Mr. Rakes argues that Ms. Dowding could not have been a willing co-conspirator with him because she was threatened into writing the letter. *See United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) (requiring some evidence that an alleged co-conspirator knowingly and voluntarily joined the conspiracy). This argument is, of course, addressed solely to whether a conspiracy existed between Mr. Rakes and Ms. Dowding and does not contemplate the possibility that, even without Ms. Dowding, the jury could have found a voluntary agreement between Mr. Rakes and Ms. Scott or perhaps Mr. Errett. Because in its briefing before us the government also pursues the theory that the conspiracy was primarily between Mr. Rakes and Ms. Dowding,

and because we agree that sufficient evidence of such a conspiracy was presented, we accept for our current purposes Mr. Rakes's premise that the conspiracy was only between Ms. Dowding and himself.

Viewing the case in this light, we begin by readily acknowledging that Ms. Dowding presented alternative and conflicting testimony about the nature of her involvement in the alleged conspiracy, including statements suggesting she was coerced by Mr. Rakes, by voices in her head, or perhaps by someone else. But one of the accounts she offered did involve an admission of her knowing and voluntary participation in a scheme with Mr. Rakes. In our judicial system, the jury, as factfinder, was charged with the task of sifting the wheat from the chaff, discerning which (if any) of Ms. Dowding's accounts merited belief. *See Young v. Sirmons*, 486 F.3d 655, 666 (10th Cir. 2007) ("[It is] the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Of course, a jury is not free to credit testimony beyond the pale of reason, *see Parker v. Scott*, 394 F.3d 1302, 1315 (10th Cir. 2005) (distinguishing inconsistent testimony from that which is "inherently implausible"), but we are not allowed to substitute our judgment for that of the jury when it comes to deciding which rationally plausible account of the facts to credit, *see Young*, 486 F.3d at 666.

Though the question whether Ms. Dowding was worthy of belief in any of her accounts is not one that can be reflexively dismissed, neither can we say that no rational jury could have credited her testimony that she wrote the letter willingly, with the help of, or at the suggestion of, Mr. Rakes. It seems to us that the jury could have reasonably concluded that this particular version of events was more believable than Ms. Dowding's alternative explanations, and that her alternative explanations were calculated to minimize her own culpability and rationalize her willing involvement with Mr. Rakes. Bolstering the plausibility of such a conclusion is the fact that Ms. Dowding was not the sole source of evidence about the agreement between herself and Mr. Rakes. Mr. Errett, who read the threatening letter at Mr. Rakes's apartment, testified that Mr. Rakes told him that he and Ms. Dowding had written the letter. Ms. Scott likewise testified that, after she looked up the address of the victim at the library, she brought it back to Mr. Rakes at his apartment, where Ms. Dowding, under no apparent duress, was writing and had paper and envelopes. To the extent that the jury believed either or both of these witnesses, their testimony tended to corroborate, and thus help make rationally plausible, Ms. Dowding's version of the events in which she and Mr. Rakes knowingly and voluntarily conspired.

While this case surely required the jury to pick and choose among competing versions of events, with at least three witnesses testifying that Ms.

Dowding and Mr. Rakes worked together on the threat letter we cannot say, as we must for Mr. Rakes to prevail, that no rational trier of fact could have found beyond a reasonable doubt that Ms. Dowding and Mr. Rakes entered into an agreement aimed at preventing the victim prosecutor from performing her job by means of force, violence, or intimidation.

### III

Mr. Rakes next contends that the district court committed reversible error by failing to disclose the victim impact letter during the course of its hearing on the parties' plea agreement.[2] In aid of his argument, Mr. Rakes rests primarily on Rule 32 of the Federal Rules of Criminal Procedure, which requires a sentencing court to provide both parties with any information on which it will rely in sentencing and give them a reasonable opportunity to comment on the information. *See* Fed. R. Crim. P. 32(i)(1)(B). Under our case law, failing to disclose evidence on which the court relied in sentencing may result in a remand for resentencing. *See United States v. Alvarado*, 909 F.2d 1443, 1444-46 (10th Cir. 1990).

We agree with Mr. Rakes and the government that it would have been better for the district court to have provided the parties with copies of the

---

[2] The government requested that its supplemental record, including the victim impact letter, the threat letter and envelope, and the first presentence report, be sealed – a motion that we provisionally granted on May 7, 2007, pending this panel's final decision. Today, we confirm our prior ruling and grant the government's (unopposed) motion.

victim impact letter prior to its disposition of the plea agreement. Doing so would have made more transparent the district court's concerns about whether the plea agreement's proposed sentence adequately accounted for the crime's impact on the victim prosecutor and would have allowed the parties to address those concerns more intelligently. But, by its plain terms, Rule 32(i)(1)(B) obligates the district court to provide the parties advance access to information on which it "will rely in sentencing." And the harm it seeks to safeguard against is sentencing based on evidence that the parties have not had reasonable notice of and opportunity to address. *See United States v. Begay*, 117 Fed. Appx. 682, 683 (10th Cir. 2004) (noting Rule 32 seeks "to ensure that sentencing is based on reliable facts found by the court itself after deliberation").[3] Here, however, the court did not sentence Mr. Rakes. Instead, it concluded the hearing by advising the parties that it would *not* sentence Mr. Rakes that day in accord with their plea agreement. Had the court proceeded to issue something other than the parties' agreed sentence without first affording

---

[3] *See also* 3 Charles Alan Wright et al., *Federal Practice & Procedure* § 524 (3d ed.) (reporting that Rule 32 was amended to respond to "the concern that the vitally important sentencing decision will be made on the basis of erroneous information"); *United States v. Hamad*, 495 F.3d 241, 243 (6th Cir. 2007) (holding that, because "escalation of a sentence based on undisclosed evidence raises serious due process concerns," Rule 32 requires a sentencing court "either to disclose sufficient details about the evidence to give the defendant a reasonable opportunity to respond or . . . to refrain from relying on the evidence"); *United States v. Baldrich*, 471 F.3d 1110, 1113 (9th Cir. 2006) (pointing out Rule 32's concern with *ex parte* communications that may result in the district court considering undisclosed or improper facts).

them a meaningful opportunity to review and comment on the victim's letter, Rule 32(i)(1)(B) surely would have been implicated and we would have before us a very different case. As it is, however, we cannot say the rule, by its plain terms, was violated, or that the harm it seeks to avoid was implicated. In fairness to the district court we must also note that, although the parties did not have the victim's letter, they were at least on notice of its existence and could have sought its production. The presentence report prepared for the plea hearing explicitly stated, under "Victim Impact," that "[the victim] is preparing a statement that will be submitted directly to the Court." P.S.R. of Oct. 5, 2005 at ¶ 11.

Beyond Rule 32, there remains in our view a distinct and even more germane question. A district court enjoys substantial discretion in deciding whether to accept or reject a plea agreement under Rule 11. *See* Fed. R. Crim. P. 11(c)(3); *United States v. Robertson*, 45 F.3d 1423, 1438 (10th Cir. 1995); *United States v. Carrigan*, 778 F.2d 1454, 1461-62 (10th Cir. 1985). But that discretion is not without limit. *See Robertson*, 45 F.3d at 1438. While a defendant has no absolute right to have his plea agreement accepted, in our supervisory capacity we have placed some boundaries on the district court's discretion – requiring district courts, for example, to articulate reasons on the record if and when they decide to reject such agreements in order, among other things, "to insure district courts exercise sound judicial discretion." *Id.*

Though Mr. Rakes's brief primarily discusses Rule 32, we also understand him to suggest that, even if Rule 32 is not implicated, a district court cannot exercise sound judicial discretion under Rule 11 in rejecting a plea agreement when it acts on the basis of undisclosed evidence, and this strikes us as a very different and more appropriately targeted question.

The parties, however, have directed us to no authority on this issue and, at the end of the day, we believe this case is properly resolved without reaching it. Rule 11 expressly provides that, even if the rules associated with the acceptance or rejection of a plea agreement are violated, any such error is to be deemed "harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h); *see also* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). On balance, we think this mandate applies here.

After Mr. Rakes became aware of the victim impact letter, he asked the district court to reconsider its decision to reject the parties' plea agreement, arguing that the court's decision had improperly relied on undisclosed information. The district court denied reconsideration, citing, among other grounds, the fact that it "would have rejected the plea agreement regardless of the letter for the reasons set forth plainly on the record." Sealed Mem. Decision and Order, at 5. Those reasons included the district court's assessment that the Guidelines advisory sentence for the crime to which Mr.

- 13 -

Rakes agreed to plead guilty was at least double that of the parties' agreed sentence and neither party had offered a persuasive reason for such a disparity under the facts and circumstances of this case. Before us on appeal, Mr. Rakes likewise offers us no reason to doubt the district court's assessment, making no attempt to show why such a disparity would have been warranted. Neither does he identify, nor did he state in his motion to reconsider, what information in the victim's letter was incorrect or what arguments addressing it he would have made to the district court. Without being given *some* reason to think that a sentencing court would have reached a different outcome in the disposition of the plea agreement had the letter been disclosed, we are compelled to conclude that, even taking the district court's failure to disclose the letter to be error, it was harmless error.

IV

After trial, the district court sentenced Mr. Rakes on the sole surviving charge, 18 U.S.C. § 372, in accord with Section 2A6.1(a)(1), the guideline for threatening or harassing communications. Mr. Rakes argues that the most analogous guideline is instead Section 2A2.4, pertaining to obstructing or impeding an officer, and that his sentence was therefore in error.

In approaching this dispute, we note at the outset that it is common ground between the parties that the Sentencing Guidelines Manual does not specify a sentencing range for Mr. Rakes's offense, and so the district court

was obliged to "apply the most analogous offense guideline [or,] [i]f there is not a sufficiently analogous guideline, [to sentence the defendant according to] the provisions of 18 U.S.C. § 3553." U.S.S.G. § 2X5.1. Accordingly, under our case law, the district court first had to determine whether *any* guideline was sufficiently analogous to be used in sentencing Mr. Rakes. *United States v. Nichols*, 169 F.3d 1255, 1270 (10th Cir. 1999). If more than one sufficiently analogous guideline could be found, the court then had to assess which qualified as the *most* analogous, and employ it in sentencing Mr. Rakes. *Id.* at 1271. Put another way, the court first had to ask what analogous provisions were within the ballpark; it then had to ask which represented the best fit. On appeal, we review the district court's determinations on these scores *de novo* to the extent they rest on legal bases, and for clear error to the extent they rest on factual findings. *Id.* at 1270-71; *United States v. Fortier*, 180 F.3d 1217, 1225 (10th Cir. 1999). Because the parties' dispute in this case involves only an interpretation of the Guidelines, our *de novo* standard applies.

A

On the first question posed by our test, we discern no material disagreement between the parties. We generally compare the elements of the defendant's crime to the elements of federal offenses already covered by specific Guidelines sections to ascertain which plausible analogies exist for sentencing. *Id.* at 1270. Here, the parties seem to agree that two candidates

emerge from this process – Sections 2A6.1 and 2A2.4.  The offense of which the jury convicted Mr. Rakes requires (1) two or more persons to conspire (2) to prevent any person from discharging the duties of their office under the United States (3) by force, intimidation, or threat.  *See* 18 U.S.C. § 372.  Guideline 2A6.1 applies to threatening or harassing communications, and the majority of the offenses covered by that section capture the threat and intimidation aspect of 18 U.S.C. § 372, requiring a threat of harm against a person, and some require that the person be a particular officer of the United States.  *See* 18 U.S.C. §§ 32(c), 871, 876, 877, 878(a), 879, 2332b(a)(2); 47 U.S.C. § 223(a)(1)(C)-(E); 49 U.S.C. § 46507.  Meanwhile, guideline 2A2.4 applies to efforts to obstruct or impede various officers or employees of the United States by force, *see* 18 U.S.C. §§ 111, 1501, 1502, to the obstruction of a federal law enforcement agent, *see* 18 U.S.C. § 3056(d), and to interference with the administration of internal revenue laws by force or threat of force, *see* 26 U.S.C. § 7212(a).

B

Which of these two provisions, 2A6.1 or 2A2.4, is most analogous and thus properly employed in this case is where the dispute begins.  The government argues, and the district court agreed, that 2A6.1 is the most analogous provision.  Mr. Rakes disagrees, submitting that 2A2.4 is the apter section.  The dispute is hardly inconsequential:  under 2A6.1, with the

appropriate adjustments for Mr. Rakes's criminal history and offense characteristics, his advisory Guidelines sentencing range is 63 to 78 months; under 2A2.4 with similar adjustments, his sentencing range is only 37 to 46 months.

In approaching the resolution of this dispute, we pause to acknowledge an antecedent complication. Our sister circuits have adopted competing approaches to the question of what information a court should look at when deciding which Guidelines section is the most analogous. *See Nichols*, 169 F.3d at 1271. Some courts restrict their analysis to the facts alleged in the indictment or information. *Id.*; *see* U.S.S.G. § 1B1.2(a); *United States v. Saavedra*, 148 F.3d 1311, 1316-18 (11th Cir. 1998); *United States v. Hornsby*, 88 F.3d 336, 338-39 (5th Cir. 1996); *United States v. Terry*, 86 F.3d 353, 357-78 (4th Cir. 1996). Others look beyond such documents to examine the defendant's proven relevant conduct. *Nichols*, 169 F.3d at 1271; *see* U.S.S.G. § 1B1.3; *United States v. Osborne*, 164 F.3d 434, 438 (8th Cir. 1999); *United States v. Marquardo*, 149 F.3d 36, 45 (1st Cir. 1998); *United States v. Clay*, 117 F.3d 317, 319-20 (6th Cir. 1997). The parties in this case do not advocate for either approach and because we conclude that the district court chose the appropriate guideline using either methodology, we decline to enter this inter-circuit fray today.

Looking solely to the face of Count II of the indictment, it charged Mr. Rakes with a conspiracy to threaten and intimidate a federal prosecutor; alleged that he conspired to write a letter with threatening language, listing the street on which the victim lived; and contended that he or a co-conspirator sent the letter to the victim through the mail. Guideline 2A6.1 appears most analogous to the offense conduct charged in Count II because, as the district court noted, it better captures the element of a letter seeking to threaten or intimidate a public official. The majority of the 2A6.1 listed offenses concern threats of harm. *See* U.S.S.G. § 2A6.1. By contrast, most (though admittedly not all) of the offenses listed as predicates for guideline 2A2.4 do not involve threats or intimidation and the concomitant complexities and premeditation such actions imply, but instead concern simple assaults against officers of the United States. *See* U.S.S.G. § 2A2.4. Accordingly, when compared against the indictment itself, 2A6.1 appears the most analogous guideline.

An examination of all the circumstances of the case confirms rather than alters this conclusion. The case actually proven at trial against Mr. Rakes centered around the threatening letter – focusing on his involvement in writing the letter, addressing it, and conveying its threat to the victim prosecutor. Although the evidence showed that Mr. Rakes sought to impede the prosecution of members of the Soldiers of Aryan Culture, it also demonstrated that he intended to accomplish this goal by means (at least in the first instance) of a

premeditated and comparatively complex scheme of intimidation rather than by an act of simple assault.

C

Mr. Rakes objects that, like 18 U.S.C. § 372, guideline 2A2.4 incorporates the fact that the victim was a governmental officer, while guideline 2A6.1 is not necessarily so limited. And this is surely true. But while 2A6.1 does not incorporate the official status of the victim into the base offense level, the Guidelines enhancement for an official victim, Section 3A1.2, expressly applies to 2A6.1 and not 2A2.4. *See* U.S.S.G. § 2A2.4 n.2. Thus, the status of the victim is covered by both provisions and no reason to distinguish between them. Confirming the point, the district court applied the official victim enhancement to Mr. Rakes's sentence, making his sentence under guideline 2A6.1 track the elements of 18 U.S.C. § 372 almost exactly.

Mr. Rakes next argues that guideline 2A2.4 is most analogous because its title, "Obstructing or impeding officers," employs an almost identical formulation as the title language of 18 U.S.C. § 372, "Conspiracy to impede or injure officer." But whether we adopt the face of the indictment test or the competing proven conduct test, in neither circumstance is the question as facile as matching titles of statutes and guidelines. Both require more analysis from us than that. Neither can titles of statutory or Guidelines provisions limit the plain meaning of the provisions themselves. *See Griffin v. Steeltek, Inc.*, 160

F.3d 591, 594 n.4 (10th Cir. 1998) ("[T]he title to a statutory provision is not part of the law itself."); 2A *Sutherland Statutory Construction* § 47:3 (7th ed.) (stating the statutory title "does not constitute part of the statute and is not controlling regarding its construction or interpretation").

Looking beyond titles, Mr. Rakes suggests that guideline 2A2.4 is the most analogous because one of the statutes (though only one of the at least 30 statutes) covered by the guideline, 26 U.S.C. § 7212, proscribes threatening conduct similar to that of 18 U.S.C. § 372. Section 7212, part of the Internal Revenue Code, proscribes using force or threats of force, including threatening letters or communications, to intimidate or impede internal revenue officers or the administration of the internal revenue laws. 26 U.S.C. § 7212.

Although we concede that the offense conduct in § 7212 is similar to the § 372 offense conduct in this case to the extent both center on communicating threats to federal officers, Mr. Rakes's argument fails to take account of the fact that § 7212 actually consists of two parts with two different applicable guidelines. The first part, intimidating or impeding a tax administration officer of the United States, uses guideline 2A2.4, but the second part, obstructing or impeding the due administration of the internal revenue laws, employs guideline 2J1.2, obstruction of justice, which is more severe than 2A2.4. *See* U.S.S.G. app. A; *United States v. Gunwall*, 1998 WL 482787, at *3 (10th Cir. 1998). And, in fact, guideline 2J1.2 imposes sentences more akin to those

found in 2A6.1, the provision employed by the district court in this case. For example, given Mr. Rakes's offense conduct and criminal history, his 2A6.1 advisory sentencing range would be 63-78 months; with the same offense characteristics and criminal history, his sentencing range under 2J1.2 would be 70-87 months (as opposed to 37-46 months under 2A2.4). The indictment in this case not only charged Mr. Rakes with conspiring to threaten the prosecutor but also with conspiring to impede and thwart the prosecution of members of the Soldiers of Aryan Culture, that is, impede the due administration of the law. Thus, even if § 7212 were similar to the offense in this case, Mr. Rakes's conduct would likely implicate, and be more analogous to, the more severe guideline, not 2A2.4, as he urges.

Finally, Mr. Rakes contends that it was improper for the district court to sentence him under guideline 2A6.1, threatening or harassing communications, when the court granted him an acquittal on mailing a threatening communication, 18 U.S.C. § 876, which falls squarely within guideline 2A6.1. We have, however, already rejected precisely this argument in *Nichols*. There, the jury in the Oklahoma City bombing trial acquitted Terry Nichols on counts of first and second degree murder, but the district court sentenced him for his crime of conviction – conspiring to use a weapon of mass destruction – under the guideline applicable to first degree murder. *Nichols*, 169 F.3d at 1276 n.7. We affirmed Mr. Nichols's sentence under the first degree murder guideline,

- 21 -

finding that it was the most analogous, and his acquittal of murder did not affect our "most analogous guideline" inquiry.  *See id.* at 1270-76; *see also United States v. Sarracino*, 131 F.3d 943, 950 (10th Cir. 1997) (finding no merit in the argument that acquittal of first degree murder should preclude use of the first degree murder offense level at sentencing).  Mr. Rakes offers us no reason why *Nichols* does not control the outcome of his case on this point.

*  *  *

The district court's judgment is *Affirmed*.