FILED
United States Court of Appeals
Tenth Circuit

December 16, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JORDAN HALLIDAY,

      Defendant-Appellant.

No. 10-4200

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:09-CR-00413-TS)**

_____

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, and Kent R. Hart, Assistant Federal Public Defender, on the brief), Salt Lake City, Utah, for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Carlie Christensen, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

_____

Before **KELLY**, **BALDOCK**, and **EBEL**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

Defendant challenges his sentence for criminal contempt for refusing to testify before a grand jury. The sentencing guideline provision for contempt requires the district court to "apply the most analogous offense guideline." The district court in this case applied the guideline for obstruction of justice. Defendant argues the district court should

have applied the provision for failure to appear as a material witness. He also challenges his sentences as substantively unreasonable. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

A grand jury in the District of Utah subpoenaed Defendant as part of an investigation into attacks on three mink farms. Defendant is the founder of the Animal Defense League of Salt Lake City. The Government believed Defendant had information relevant to the grand jury's investigation. Defendant, however, denies that he knew anything about the attacks. At his first appearance before the grand jury, Defendant refused to take the oath, and answered virtually every question with "no comment." Six days later, Defendant sent a series of text messages to William Viehl, a target in the grand jury's investigation who was subsequently convicted in connection with two of the mink farm attacks. In the first message, Defendant told Viehl that "the 3 of us need to sit down and have a talk so we are all on the same page." Viehl asked if Defendant had "been talked to again." Defendant responded, "No, not yet! I've just been hearing some rumours and I want to make sure we are all on the same page." He added that "it's involving the GJ."

The grand jury again subpoenaed Defendant. At this second grand jury appearance Defendant took the affirmation, but again answered "no comment" to nearly every question. During a recess, the district court instructed Defendant that he must answer questions unless he had a legally recognizable privilege. When the grand jury reconvened, Defendant pleaded a Fifth Amendment privilege to every question, including

questions such as where he lived or if he intended to answer any questions.  Later that day, Defendant again texted Viehl.  He said, "Got the court extended until the 13.  We need time to file motions and such."  He also said that "grand juries are fucked and every activist I know . . . would agree and would/have resisted grand juries as well."  Referencing the comedian Dave Chappelle, Defendant said,

> Well, after my dave chapelle . . . I plead the 5th routine today.  I was making some fo [sic] the gj laugh.  I was sayin' like "1-2-3-4-5th!".  And they asked to see and they asked to see and they asked her to grant me more time as well, because they needed more time.  The prosecutor was pissed as fuck.

At Defendant's civil contempt hearing, the Government granted Defendant immunity for his grand jury testimony.  The court determined Defendant could not claim a Fifth Amendment privilege.  After Defendant confirmed to the court that he still refused to answer grand jury questions, the court found Defendant in civil contempt and ordered him incarcerated.  Defendant remained in custody for 108 days, until the grand jury's term expired.

Thereafter, another grand jury indicted Defendant for criminal contempt in violation of 18 U.S.C. § 401.  He pleaded guilty to that offense.  The sentencing guideline for contempt, U.S.S.G. § 2J1.1, incorporates U.S.S.G. § 2X5.1, which directs the court to "apply the most analogous offense guideline."  Defendant argued that the most analogous guideline was U.S.S.G. § 2J1.5, entitled "Failure to Appear by Material Witness."  The district court, however, applied the guideline provision recommended by the probation office, U.S.S.G. § 2J1.2, entitled "Obstruction of Justice."  The district court determined, based on its factual findings, that obstruction of justice was the most analogous offense.

The court found:

> Defendant's refusal to follow a lawful order to testify before the grand jury because it might lead to indictments is . . . an effort to impede the grand jury because a witness's refusal to testify is motivated by a desire to impede prosecution.
>
> The fact that two individuals were indicted by the grand jury does not negate Defendant's express intent to impede prosecution. Defendant's expressed intent not to assist the government's efforts to indict was not limited to those two particular individuals. Further there is at least one similar offense for which no one has yet been indicted.

Section 2J1.2 and Defendant's criminal history category yielded a guideline range of 10 to 16 months. The court sentenced Defendant to 10 months imprisonment, but granted his motion for supervised release pending this appeal. Defendant now appeals his sentence.

II.

We review the reasonableness of a sentence under the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46 (2007). "Reasonableness review has a procedural and substantive component." United States v. Martinez, 610 F.3d 1216, 1223 (10th Cir. 2010). Procedural reasonableness focuses on whether the district court erred in "calculating or explaining the sentence." United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009). Substantive reasonableness focuses on whether the length of the sentence is reasonable in light of the factors contained in 18 U.S.C. § 3553(a). Id. Defendant challenges both the procedural and substantive reasonableness of his sentence.

A.

Defendant argues that the district court erred procedurally in applying the

sentencing guideline for obstruction of justice. The parties dispute the standard of review. The Government, citing only cases from other circuits, argues that we should give due deference to the district court's selection of the most analogous guideline. Defendant, citing United States v. Munoz-Tello, 531 F.3d 1174, 1181 (10th Cir. 2008), argues that we review the selection de novo. Unfortunately, the cases in our circuit are likely to perpetuate such confusion. When reviewing the district court's calculation of the guidelines, "we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Mollner, 643 F.3d 713, 714 (10th Cir. 2011) (quoting Munoz-Tello, 531 F.3d at 1181). Where a district court must select the most analogous guideline, we have stated the rule two ways. In United States v. Cherry, 572 F.3d 829, 831 (10th Cir. 2009), we said we "review de novo whether the facts found by the court support the application of the guideline it selected." (citing United States v. Fortier, 180 F.3d 1217, 1225 (10th Cir. 1999)). Thus, under Cherry, once we have reviewed the district court's factual findings for clear error, we review its selection of the most analogous guideline de novo. Yet in United States v. Rakes, 510 F.3d 1280, 1287 (10th Cir. 2007), we said we review the district court's determinations in selecting the most analogous guideline "de novo to the extent they rest on legal bases, and for clear error to the extent they rest on factual findings." We went on to say in Rakes that a case involving "only an interpretation of the Guidelines" was subject to de novo review. Id. Rakes appears to conflict with Cherry to the extent it suggests that in some cases we might review the selection of the appropriate guideline (as opposed to the underlying facts) for clear error. We need not resolve this

apparent discrepancy here, because we believe the district court selected the appropriate guideline under either standard of review.

Even if we review de novo whether the district court selected the most analogous guideline, we first must review the district court's underlying factual findings for clear error. Mollner, 643 F.3d at 714. Defendant argues that obstruction of justice is not the most analogous offense because he refused to testify "as a matter of conscience based on his personal beliefs," rather than out of any intent to impede the grand jury. He argues that he knew nothing about the mink farm attacks, and that his refusal to testify therefore did not obstruct justice. The district court found, however, that Defendant was "motivated by a desire to impede prosecution." The court noted that Defendant "admit[ted] his purpose was a refusal to assist the government in its efforts to indict others." We review this factual finding for clear error. "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." United States v. McClatchey, 316 F.3d 1122, 1128 (10th Cir. 2003) (quoting United States v. Torres, 53 F.3d 1129, 1144 (10th Cir. 1995)).

We faced an almost identical case in United States v. Voss, 82 F.3d 1521 (10th Cir. 1996). There, the district court sentenced the defendants for contempt using § 2J1.2. Id. at 1531. Like Defendant, the Voss defendants argued the "most analogous" guideline was actually U.S.S.G. § 2J1.5. Id. In Voss, we noted the First Circuit's holding in United States v. Underwood, 880 F.2d 612, 620 (1st Cir. 1989), that § 2J1.5 was most

analogous where the district court had found the defendant acted in good faith and did not intend to obstruct justice, but only intended "not to testify." We distinguished Underwood, however, because the district court in Voss specifically found the defendants were obstructing justice by "preventing the Grand Jury from getting records that most probably would have been of assistance to the Grand Jury." Voss, 82 F.3d at 1531. We determined that the district court's finding was not clearly erroneous. Id. Reviewing the selection of the guideline de novo, we said, "[i]n light of the district court's factual finding, we believe that the district court quite properly sentenced the defendants under § 2J1.2, as this was the most analogous guideline under the circumstances of this case." Id. at 1531–32.

In this case, as in Voss, there was ample evidence to support the district court's finding that Defendant intended to impede prosecution. Defendant was in frequent communication with Viehl, who was ultimately convicted in two mink farm attacks. He told Viehl they needed to "get on the same page" after Defendant's first grand jury appearance. He also expressed a disdainful view of grand juries and said he intended to "resist" the grand jury. These facts were certainly sufficient for the district court to conclude Defendant was "motivated by a desire to impede prosecution." In short, the district court's factual findings were not clearly erroneous.

Based on the district court's factual findings, we cannot say that it selected the wrong guideline provision, even on de novo review. In fact, the Guidelines themselves suggest applying § 2J1.2 in certain contempt cases. The application notes to § 2J1.1, the guideline for contempt, say, "Because misconduct constituting contempt varies

significantly . . ., the Commission has not provided a specific guideline for this offense. *In certain cases, the offense conduct will be sufficiently analogous to §2J1.2 (Obstruction of Justice) for that guideline to apply*." U.S.S.G. § 2J1.1 commentary n.1 (emphasis added). Although this does not mean § 2J1.2 is the appropriate guideline in every contempt case, the commentary emphasizes that these decisions are "highly context-dependent." Id. In this case, the district court specifically found that Defendant intended to obstruct justice. This finding makes the case fit squarely within "obstruction of justice." Defendant's refusal to testify over a long period and his statements about "resisting" the grand jury make his conduct more serious than simply failing to appear as a material witness. Thus, the district court did not err in selecting § 2J1.2 as the most analogous guideline.

B.

Defendant next argues that his sentence is substantively unreasonable. Under our substantive review, a sentence that is properly calculated under the guidelines is entitled to a rebuttable presumption of reasonableness. United States v. Beltran, 571 F.3d 1013, 1018 (10th Cir. 2009). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Gall, 552 U.S. at 51. Rather, "[w]e reverse only when the district court 'renders a judgment that is arbitrary, capricious, whimsical or manifestly unreasonable.'" Martinez, 610 F.3d at 1227 (quoting Friedman, 554 F.3d at 1307).

Defendant argues his sentence is unreasonable because a sentence of probation would have satisfied the sentencing factors in 18 U.S.C. § 3553(a). He says his

"exemplary conduct" since becoming an adult and throughout his pretrial release demonstrated that incarceration was not necessary to deter criminal conduct, see § 3553(a)(2)(B), or protect the public from further crimes, see § 3553(a)(2)(C). He also argues that his ability to overcome prior mental disorders and his plans to further his education also supported probation under § 3553(a)(2)(D). Yet even if these factors weighed in Defendant's favor, other factors did not. Section 3553(a)(1) requires the district court to consider the "nature and circumstances of the offense and the history and characteristics of the defendant." The district court observed at sentencing that Defendant "admit[ted] his purpose was a refusal to assist the government in its efforts to indict others. That is a serious offense." The district court expressed concern about Defendant's criminal history, which included a juvenile adjudication for resisting arrest and a more recent conviction for illegal picketing in a residential neighborhood.

The district court also noted Defendant's "contempt for the grand jury." Section 3553(a)(2)(A) specifically requires the district court to consider the need for the sentence "to reflect the seriousness of the offense" and "to promote respect for the law." The court observed that Defendant "had so little regard for the grand jury that he later texted a friend to boast of the childish and churlish way he had just acted before the grand jury." Finally, the district court rejected Defendants argument that the sentence would create an unwarranted disparity under § 3553(a)(6). Defendant argued to the district court that his initial guideline range would result in an unwarranted disparity because it was similar to the sentences given to those actually convicted of animal enterprise terrorism in the mink

farm attack, Viehl and Hall, even though Defendant's conduct "paled in comparison."[1] The district court properly rejected this disparity argument. The district court sentenced Viehl to 24 months imprisonment, Hall to 21 months, and required them jointly and severally to pay $66,753 in restitution. United States v. Viehl, No. 09-cr-0119-DB, Dkt. Nos. 97, 142 (D. Utah). Defendant's actual sentence was significantly lower than Viehl and Hall's sentences, thus removing any potential disparity. The district court properly considered the § 3553(a) factors and did not impose an unreasonable sentence in light of the factors.

Defendant claims a ten-month sentence "is extreme and has no equal or comparison anywhere in the country." In fact, we need not look beyond this circuit to find an analogous case. In Voss, the three defendants were directors of an organization that espoused "dissident views regarding the federal reserve and the income tax systems and advocat[ed] the return to currency backed by gold and/or silver." Voss, 82 F.3d at 1523. A grand jury investigated the organization for tax fraud, and the defendants refused to comply with subpoenas of their records. A jury found the defendants guilty of criminal contempt, but acquitted them on the substantive charges. Id. at 1524. The district court sentenced them to terms ranging from twelve to twenty-four months, all sentences greater than Defendant's. Id. at 1524. Defendant attempts to distinguish Voss on the basis that the Voss defendants knowingly refused to disclose evidence, whereas

---

[1] Defendant's presentence report recommended a three-level increase under U.S.S.G. § 2J1.2(b)(2) for the offense resulting in substantial interference with the administration of justice. This put Defendant's recommended guideline range at 15 to 21 months. The district court, however, rejected this three-level increase, which yielded a guideline range of 10 to 16 months.

Defendant "stated he had no knowledge of any criminal activity" and "chose not to testify because he believed that prosecutors were unfairly targeting the animal rights community." The district court could have reasonably rejected Defendant's assertion that he knew nothing of the attacks based on Defendant's text message to Viehl that the needed to "get on the same page." Furthermore, we fail to see a relevant distinction between the Voss defendants refusing to cooperate based on their objections to paying taxes and Defendant refusing to testify based on his objections to the prosecution of animal rights activists. Voss establishes that Defendant's sentence was neither extreme nor unprecedented.

Other circuits have also upheld longer sentences than Defendant's. In United States v. Marquardo, 149 F.3d 36, 39 (1st Cir. 1998), the defendant refused to testify to a grand jury and was incarcerated for fifteen months for civil contempt. The district court then sentenced him to fifteen months' imprisonment for criminal contempt. Id. Defendant also argues that his 108-day incarceration for civil contempt was itself a sufficient sentence to meet the goals of § 3553(a). Marquardo disposes of this argument as well. As in Marquardo, the district court here could have reasonably concluded the § 3553(a) factors required imposition of a criminal sentence in addition to civil coercive custody. Accordingly, we cannot conclude that Defendant's sentence was manifestly unreasonable.

AFFIRMED.