**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 17, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PEDRO DIAZ-MARTINEZ,

    Defendant-Appellant.

No. 11-6288

(D.C. No. 5:CR-11-00117-C-1)
(W. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore,
submitted without oral argument.

Defendant Pedro Diaz-Martinez (Diaz) pled guilty to a single count of illegal
reentry after previous deportation or removal, in violation of 8 U.S.C. § 1326(a), and was

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentenced to a term of imprisonment of 57 months.  Diaz now appeals, arguing that the sentence imposed by the district court was substantively unreasonable.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the sentence imposed by the district court.

I

On April 16, 2009, Diaz was arrested in Woodward County, Oklahoma, "on charges of arson first degree, endangering human life during arson, displaying false identification cards-social security card[,] displaying false identification card-resident ID card[,] and public intoxication."  ROA, Vol. 2, at 8.  The following day, April 17, 2009, an agent from the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), interviewed Diaz and determined he was an alien unlawfully present in the United States.  Consequently, "[a] federal hold was placed on" Diaz during the pendency of the state court proceedings that resulted from his arrest.[1]  Id.

On April 5, 2011, a federal grand jury indicted Diaz on one count of illegal reentry after previous deportation, removal or exclusion, in violation of 8 U.S.C. § 1326(a).  Approximately two months later, on June 7, 2011, Diaz entered a plea of guilty to the

---

[1] According to the record, two criminal cases were filed against Diaz in the District Court of Woodward County.  In the first case, Diaz was charged with one count of first-degree arson and one count of endangering human life during arson.  On February 16, 2011, Diaz pled nolo contendere to both counts and was subsequently sentenced to a term of imprisonment of five years, "with all but the first year suspended, [and] with credit for time served."  ROA, Vol. 2, at 14.  In the second case, Diaz was charged with displaying a false social security card, displaying a false resident ID card, and public intoxication.  Diaz pled guilty to the first of these charges and received a five-year suspended sentence.  The remaining charges were dismissed.

single count alleged in the indictment.

The probation department prepared and submitted to the district court and parties a presentence investigation report (PSR). The PSR, following the provisions of U.S.S.G. § 2L1.2, applied a base offense level of 8, and then enhanced that base offense level by 16 levels because Diaz had previously been deported, or unlawfully remained in the United States, following a felony conviction for a crime of violence.[2] ROA, Vol. 2, at 10. The PSR then applied a three-level reduction pursuant to U.S.S.G. §§ 3E1.1(a) and (b) for acceptance of responsibility, resulting in a total offense level of 21. The PSR also recounted Diaz's criminal history, which included nine criminal cases filed against Diaz in three different states between February 1995 and January 2011. The PSR determined that this resulted in a total of 8 criminal history points and a criminal history category of IV. Based upon the total offense level and criminal history category, the PSR concluded that "the guideline range for imprisonment [wa]s 57 to 71 months." Id. at 21.

On October 6, 2011, Diaz filed a sentencing memorandum asking the district court to impose "a sentence below the advisory guideline range advanced in the [PSR]." ROA, Vol. 1 at 19. In support of this request, Diaz argued that "the advisory guideline range of 57 to 71 months [wa]s severely flawed and grossly exceed[ed] what [wa]s necessary to reflect the seriousness of [his] crime, promote respect for the law, and justly punish [him]." Id. at 20. More specifically, Diaz argued that "the illegal reentry guideline

---

[2] The PSR specifically noted that Diaz "was convicted on October 16, 1997, of corporal injury to spouse in San Diego County Superior Court." ROA, Vol. 2, at 10.

lack[ed] empirical support" and was instead "driven largely by the nature of the defendant's prior convictions." Id. at 21. And in his case, Diaz argued, "[t]he flawed nature of the illegal reentry guideline ha[d] produced a sentencing range . . . greater than necessary to achieve [18 U.S.C.] § 3553(a)'s goals." Id. at 22. Diaz also argued that, even though "the crime of illegal reentry [wa]s a regulatory or status offense" that involved "no malicious intent, no victim, [and] no loss," it was being treated by the Guidelines in comparable fashion to "inherently dangerous or harmful crimes" such as "[a]ggravated assault involving discharge of a gun and resulting in serious injury" and "[d]istribution of 80-100 grams of heroin." Id. Lastly, Diaz argued that the Guidelines had effectively "double-counted" his 1997 conviction by first using it to increase his base offense level and then using it to increase his criminal history category. Based upon these arguments, Diaz asked the district court to impose "a sentence substantially below the advisory guideline range of 57 to 71 months." Id. at 28.

Diaz re-urged these arguments at the October 12, 2011, sentencing hearing. The district court rejected Diaz's arguments and concluded that a sentence at the bottom of the advisory guideline range was appropriate:

> [T]he whole point is, you keep coming back and you keep committing crimes. That's how you're before me; not because you're not a citizen or are here illegally. You're here before me because you've been sent back a number of times and you keep returning and committing crimes.
>
> For that reason I think a sentence within the guideline range is the only thing sufficient to protect the public, to serve as an example to others, to convince you that you can't keep committing this conduct. I think the guideline range is appropriate.

4

It is for that reason that I commit you to the custody of the Bureau of Prisons to be imprisoned for a term of 57 months.

Supp. ROA, Vol. 1, at 17.

Final judgment was entered in the case on October 17, 2011. Diaz has since filed a timely notice of appeal.

II

On appeal, Diaz argues that the 57-month sentence imposed by the district court is substantively unreasonable. "[S]ubstantive reasonableness addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Damato, 672 F.3d 832, 838 (10th Cir. 2012) (internal quotation marks omitted). "We review substantive reasonableness claims for abuse of discretion," id., "afford[ing] substantial deference to [the] district court," United States v. Smart, 518 F.3d 800, 806 (10th Cir. 2008). "[I]n many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007).

It is undisputed in this case that the district court properly calculated Diaz's sentence under the Sentence Guidelines and ultimately selected a sentence within the advisory guideline range. Consequently, the sentence imposed by the district court "is entitled to a rebuttable presumption of reasonableness." United States v. Halliday, 665

F.3d 1219, 1224 (10th Cir. 2011).

In attempting to rebut the presumption of reasonableness, Diaz argues that "the crime of illegal reentry is a 'status' offense, implicating no evil intent whatsoever or financial loss or physical injury to a victim." Aplt. Br. at 6. In turn, he argues that "the comparatively benign nature of illegal reentry is a mitigating circumstance not adequately taken into consideration by the Sentencing Commission." Id. at 8. Diaz also argues that when the crime of illegal reentry after a violent felony is "compar[ed] . . . with other crimes that yield an offense level of 24, the illegal reentry guideline seems to lack any sense of logic or proportionality." Id. at 6. As a result, Diaz argues, "a 'guidelines sentence' in this kind of case yields a result that is illogical and overly harsh when contrasted with guidelines for crimes that are factually more injurious or potentially injurious." Id. at 8.

Diaz also agues that the 57-month sentence imposed by the district court "is an unreasonable result based on the particular facts of this case." Id. Diaz specifically notes that (a) he "came to the United States from Mexico at the tender age of one year old," (b) when he was two years old, "he was severely injured in an automobile accident" that killed his father and brother, (c) "[h]is surviving family of origin lives in Oklahoma," (d) his prior criminal history is not "egregious," and (e) having "been previously removed from the United States on three [prior] occasions . . . , he had no reason to think U.S. immigration law was this drastic." Id.

Lastly, Diaz complains that his 1997 conviction for a violent felony was

6

essentially double-counted under the Guidelines because it was first used to increase his base offense level by 16 levels (effectively tripling the otherwise applicable base offense level), and then was used to increase his criminal history score and category.

We conclude, however, that all of these arguments are insufficient to overcome the presumption of reasonableness attached to the within-Guidelines sentence imposed by the district court. We have previously rejected arguments similar, if not identical, to the general attacks that Diaz makes to the Sentencing Guidelines governing his crime of conviction. E.g., United States v. Martinez-Barragan, 545 F.3d 894, 905 (10th Cir. 2008) ("[R]eentry of an ex-felon is a serious offense."); United States v. Ruiz-Terrazas, 477 F.3d 1196, 1204 (10th Cir. 2007) (holding that so-called "double-counting" of a prior conviction to calculate both the offense level and the criminal history category is permissible). Moreover, Diaz effectively presented both these general arguments, as well as his more particularized arguments, to the district court in his sentencing memorandum and in his oral arguments at the time of sentencing. The district court rejected them and concluded that a within-Guidelines sentence was appropriate given Diaz's history of illegally reentering the United States and committing additional criminal offenses. Indeed, the district court concluded that the term of imprisonment it imposed was necessary to protect the public from Diaz's criminal conduct and to persuade Diaz from reentering the United States again. We have no trouble concluding that the district court's determination was both rational and reasoned.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge