**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

OSCAR GARCIA-RUIZ,

      Defendant - Appellant.

No. 12-1061
(D.C. No. 1:07-CR-00188-MSK-17)
D. Colorado

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **EBEL**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this court has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, we grant the parties' requests and order the case submitted without oral argument.

## I. INTRODUCTION

A jury found Oscar Garcia-Ruiz guilty of multiple charges flowing from a large drug conspiracy in Denver, Colorado. *United States v. Garcia-Ruiz*, 421 F.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

App'x 903, 905-06 (10th Cir. 2011). To avoid sentencing disparities between Garcia-Ruiz and his co-defendants, the district court varied downward significantly from the range set out in the United States Sentencing Guidelines. *Id.* at 907. Despite an advisory range of 360 months to life imprisonment, the district court sentenced Garcia-Ruiz to a term of 180 months. *Id.* This court affirmed Garcia-Ruiz's convictions, but concluded the district court erred in calculating Garcia-Ruiz's offense level. *Id.* at 912. Accordingly, we remanded the case to the district court for resentencing. *Id.* at 913, 915. On remand, the district court reimposed the same downward-variant, 180-month sentence. Garcia-Ruiz appeals, asserting the district court's sentence is procedurally unreasonable. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, this court **affirms**.

## II. BACKGROUND

This court previously set out at some length the procedural background accompanying Garcia-Ruiz's first sentencing proceeding:

> Seventeen members of the Camacho Group were charged with drug possession, distribution and conspiracy charges in a 29-Count indictment. Garcia-Ruiz was tried on: conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine (Count 2); the December 7, 2006 distribution and possession with intent to distribute more than 500 grams but less than 5 Kilograms of cocaine (Count 15); the December 13, 2006 distribution and possession with intent to distribute more than 500 grams but less than 5 kilograms of a Schedule II substance and aiding or abetting the same (Count 17); the January 28, 2007 distribution of more than 500 grams but less than 5 kilograms of cocaine (Count 24); and

possession of a firearm and ammunition which had been transported in interstate and foreign commerce while being an alien unlawfully in the United States (Count 26).

By the time of trial, all but two defendants, Garcia-Ruiz and Roberto Lopez, had pled guilty or agreed to cooperate with the government. The evidence at trial consisted of testimony from several co-conspirators, law enforcement officers and the tapes from the recorded telephone conversations. The jury found Garcia-Ruiz guilty on all counts and entered special verdicts finding the drug quantities as charged (more than 5 kilograms in the conspiracy charge and, in the individual possession charges, more than 500 grams but less than 5 kilograms) in each count. Eventually, Count 15 was dismissed.

The presentence report calculated Garcia-Ruiz's offense level as 38 based, in part, on a drug quantity of greater than 150 kilograms (the amount considered solely for sentencing purposes as opposed to the 5 kilograms considered in the guilt stage) and a criminal history category of III, resulting in a guideline range of imprisonment for 360 months to life. . . . Garcia-Ruiz . . . objected to the 150 kilogram drug quantity. He argued his involvement in the conspiracy was limited to November through January, when the drug trafficking all but ended due to the government's seizure of the shipment on January 8, 2007. Therefore, he claimed, the evidence established he should be held responsible for no more than 100 kilograms. He also argued the sentences given to others in the organization in a similar role were much lower—less than ten years—so a variance below the Guidelines would avoid sentencing disparity. He requested a sentence of imprisonment of no more than ten years. At his sentencing hearing, Garcia-Ruiz testified about his failure to cooperate with the government prior to trial explaining his failure was only because his immediate family still lives in Mexico and he feared retaliation against them if he cooperated.

Pointing to Garcia-Ruiz's involvement in the conspiracy for a period of six months—from October 2006 through April 2007—the government argued testimony established there were shipments from Mexico of 25 to 30 kilograms every other week. In addition, after the shipments were discontinued from Mexico, Garcia-Ruiz actively collected debts for the conspiracy and assisted in attempts to find an

alternative supplier. Thus, the evidence supported an estimate (for sentencing purposes) holding Garcia-Ruiz responsible for 150 to 175 kilograms moved by the conspiracy during his involvement.

The court overruled Garcia-Ruiz's objection to the drug quantity concluding the jury was given sufficient evidence to find Garcia-Ruiz was involved in a conspiracy distributing more than 150 kilograms of drugs and his involvement was not insignificant. . . .

The court stated:

I am presented with a situation where the leader faces 180 months. The government seeks twice the amount of that. The probation officer, without specific recommendation, believes that the Guideline sentence should be moderated with a variant sentence under the statute. And I agree. And how does one measure that in a fair way and come up with a sentence that is sufficient but not greater than necessary.

I do take into account the reality of cooperation, including, as [the] government argues, that others perhaps [may be] threatened as well, although I agree with this defendant that specific locale is an obvious threat to this defendant and his family. But in any case, there is that to be taken into account.

I feel that the highest sentence that's been given to someone so far is 194 months. The involvement of that individual, although he cooperated, was again, much more extensive than this defendant. He was an organizer. He was involved with a gun. He purchased and sold large amounts of cocaine. . . . And I conclude that a sentence for this defendant that is essentially the equivalent of what the government feels is a maximum sentence for the kingpins sufficiently takes into account his lack of cooperation and I will conclude with a sentence of 180 months for this defendant.

*Garcia-Ruiz*, 421 F. App'x at 906-07 (footnotes omitted).

This court then addressed whether the district court erred in attributing to Garcia-Ruiz, for sentencing purposes, more than 150 kilograms of cocaine. *Id.* at 911-13. We concluded the district court had so erred and that it should not have attributed more than 137.226 kilograms of cocaine to Garcia-Ruiz. *Id.* at 912. This court further rejected the government's argument that the district court's sentencing error was harmless:

> Any error in the guidelines calculation requires a remand unless the error is harmless. *United States v. Kristl*, 437 F.3d 1050, 1054–55 (10th Cir. 2006). A harmless error is one which we can say "did not affect the sentence selected." *United States v. Tom*, 494 F.3d 1277, 1282 (10th Cir. 2007). It is the government's burden to convince us by a preponderance of the evidence the error is harmless. *United States v. Conlan*, 500 F.3d 1167, 1170 (10th Cir. 2007).

> "A district court must begin every sentencing proceeding by correctly calculating the applicable Guidelines range." *United States v. Scott*, 529 F.3d 1290, 1300 (10th Cir. 2008) (quotations omitted). "A sentence cannot . . . be considered reasonable if the manner in which it was determined was unreasonable, i.e., if it was based on an improper determination of the applicable Guidelines range." *Tom*, 494 F.3d at 1282 (quoting *Kristl*, 437 F.3d at 1055). If the district court had applied a base offense level of 36, Garcia-Ruiz's guideline range would have been 292 to 365 months imprisonment rather than the 360 month to life.

> The government argues "the question of what the applicable base offense level should have been is largely academic because Mr. Garcia-Ruiz received a much lower sentence than he would have received even if the drug quantity evidence had only supported a base offense level of 36, as opposed to 38." It contends because "the district court's variance was tied to the average sentences that were recommended by the Government for the leaders of the drug organization . . . 180 months," there is no "assurance" Garcia-Ruiz's sentence would be lower on remand. While this argument has obvious weight, it cannot carry the day.

At the time of sentencing, the court thought Garcia–Ruiz, like the "kingpins," was responsible for the distribution of over 150 kilograms of cocaine. It was faced with a difficult situation and wanted to "measure that in a fair way and come up with a sentence that is sufficient but not greater than necessary." It recognized the disparity between the actions of the different conspirators as compared to those of Garcia–Ruiz (several years of distributing well over 150 kilograms of cocaine and Garcia–Ruiz's active involvement for no more than four months) as well as the proposed sentences for others who had been significantly involved for a substantial period of time (sentences ranging from 47 months for another runner in a position similar to Garcia–Ruiz's up to 194 months for Jose Muñoz, the main partner with Alejandro in the Camacho Group.)

We recognize these other defendants pled guilty prior to trial, but we cannot know what the court would do in dealing with a correct drug amount. Therefore, the error in calculation cannot be said to be harmless in this instance and we remand for resentencing. It may be that the already lenient sentence would not change because the amount of drugs was 130+ kilograms rather than 150. But that is a decision for the trial judge, not this Court.

*Garcia-Ruiz*, 421 F. App'x at 912-13 (record citations and footnote omitted).

Upon remand, Garcia-Ruiz filed a brief motion requesting "an additional downward variance from the Guidelines, after reconsideration, and for sentence at, or near, the Mandatory Minimum sentence of ten years (120 months.)." In support of this request, Garcia-Ruiz argued, inter alia: (1) "his sentence should be reduced because of the reduction in drug quantity mandated by the appellate court"; and (2) the court should consider the assertedly more lenient sentences handed out to "ring leaders" Alejandro and Luis Camacho. Because Judge Walker Miller, the judge that presided over Garcia-Ruiz's original sentencing proceeding, had retired, the matter was reassigned to Judge Marcia Krieger.

-6-

Judge Krieger held a hearing on Garcia-Ruiz's motion. In support thereof, Garcia-Ruiz relied mainly on the assertion such a sentence was necessary to prevent unwarranted sentencing disparities. Garcia-Ruiz also argued Judge Miller arrived at the original sentence by simply varying downward fifty percent from the bottom of the prior, erroneously calculated Guidelines range. He asked Judge Krieger to utilize a similar methodology and impose a sentence somewhere between 120 months' imprisonment (the mandatory minimum) and 146 months' imprisonment (fifty percent below the bottom of the new, correctly calculated Guidelines range).[1] In response, the government urged the district court to impose the very same 180-month sentence Garcia-Ruiz had received prior to remand. The government argued that reimposing the original sentence would not create any unwarranted sentence disparities because none of the other defendants were similarly situated to Garcia-Ruiz and any disparities were warranted based on the plea agreements and substantial assistance provided by those other co-defendants.

---

[1]Judge Krieger concluded Garcia-Ruiz's arguments in this regard were not supported by the record. In particular, Judge Krieger noted that at no point in the original sentencing proceeding had Judge Miller stated he was varying downward by fifty percent in sentencing Garcia-Ruiz. Accordingly, Judge Krieger described Garcia-Ruiz's argument as follows: "[I]t's a little bit hindsight . . . to say that there was a fifty percent reduction. It's an observation, not necessarily an articulated calculation."

Having listened to the attorneys' arguments and Garcia-Ruiz's allocution, Judge Krieger proceeded to impose sentence.[2]  She first noted that in fashioning an appropriate sentence, she was guided by the sentencing factors and considerations set out in 18 U.S.C. § 3553.  Based on this court's decision on direct appeal, Judge Krieger recognized that Garcia-Ruiz's total offense level was 38 and his criminal history category was III, resulting in an advisory Guidelines range of 292 to 365 months' imprisonment.  She noted, however, that the parties agreed a downward variance was appropriate "to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct."  In fact, Judge Krieger recognized the parties' arguments focused exclusively on the question of sentencing disparity: "There has been no evidence and no argument presented with regard to any other factors . . . ."  Therefore, she stated her sentencing determination would likewise "focus[] on that particular factor."

In so focusing, Judge Krieger made a number of observations.  First, she noted § 3553(a)(6) did not require her to "engage in a mathematical computation

_____

[2]In so doing, she specifically admonished the attorneys:

Of course, Counsel, you'll have an opportunity to make legal objections before judgment is entered.  And should you believe that my reasoning is premised upon legal error or that it raises an issue you haven't had adequate opportunity to consider, please request a continuance.

that apportions among the defendants particular results." *See United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008) ("[Section] 3553(a)(6) does not require the sentencing court to compare the sentences of codefendants; rather, it looks to uniformity on a national scale."). She further recognized it was appropriate to disregard co-defendants whose sentences were reduced based on U.S.S.G. § 5K1.1 (which allows a reduction for defendants who render substantial assistance to the Government) and U.S.S.G. § 3E1.1 (which allows a reduction for defendants who plead guilty). *See United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006) ("While similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record." (quotation omitted)).

Keeping these considerations in mind, Judge Krieger determined Garcia-Ruiz had identified only a single similarly situated co-defendant: Roberto Lopez. In light of all the other sentencing factors set out in § 3553, however, Judge Krieger concluded any disparity between sentences imposed on Garcia-Ruiz and Lopez did not warrant a lower sentence for Garcia-Ruiz:

> There is only one defendant here who doesn't have warranted sentence disparities, and that's the other defendant who went to trial.
>
> Now, we do not know what his base offense level was, we don't know how the calculations worked with regard to him. We do know that relative to this defendant, Judge Miller, believing them to have the same offense level and range, sentenced Mr. Roberto Lopez to a lower variant sentence.

We also know that Judge Miller applied all the 3553 factors in determining what sentence was appropriate for Mr. Garcia Ruiz, and that includes more than just sentence disparities.

Since none of the other factors have been questioned at this juncture, I'm assuming that those are taken into account in the 180-month sentence that was imposed by Judge Miller. And based on my review of all of the record here that those are taken into account and I would account for them there, the only question thus is whether or not there should be a further reduction based on a change in the guideline level. And the most persuasive argument that's made by the defense is there was a 50 percent reduction from the bottom of the guideline range that Judge Miller imposed and that should be applied here.

But I reject that argument. And I reject it because Judge Miller had at the time of sentencing of Mr. Garcia Ruiz and Mr. Roberto Lopez two individuals who went through trial, and he presumptively fashioned a sentence that took into account all of the 3553(a) factors, and he concluded that Mr. Garcia Ruiz's sentence should be longer than that of Roberto Lopez.

Taking into account all of those same factors and the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct, as well as the purposes and objectives of sentencing, I see no reason to change the sentence that was imposed by Judge Miller.

Having stated her reasoning, Judge Krieger specifically asked the parties if there was "any need for clarification or further explanation." Both parties answered in the negative. Accordingly, Judge Krieger had Garcia-Ruiz approach the lectern and officially reimposed a sentence of 180 months' imprisonment. Immediately thereafter, she again asked the parties if there was "any further business to bring before the Court before we recess." At that point, Garcia-Ruiz offered up the

following general objection: "[F]or the record and for purposes of further appeal, I'd like to lodge an objection to the sentence that the Court has imposed."

## III.  DISCUSSION

On appeal, Garcia-Ruiz now asserts the district court's sentence is procedurally unreasonable in the following two respects: (1) the sentence is based on clearly erroneous facts; and (2) the district court erroneously constrained its analysis of unwarranted sentencing disparities to Roberto Lopez.  *Cf. United States v. Halliday*, 665 F.3d 1219, 1222 (10th Cir. 2011) ("Procedural reasonableness focuses on whether the district court erred in calculating or explaining the sentence." (quotation omitted)).  In the context of a challenge to the procedural reasonableness of a sentence, we generally review the district court's legal conclusions de novo and its factual findings for clear error.  *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam).  If, however, a defendant fails to raise a timely objection in the district court, this court only reviews the claim of procedural unreasonableness for plain error.  *See United States v. Romero*, 491 F.3d 1173, 1176-77 (10th Cir. 2007).  To prevail under the plain error standard, a defendant must show an error that is plain, which affects substantial rights, and which seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.* at 1178.

## A. Erroneous Factual Findings

Garcia-Ruiz claims Judge Krieger selected a sentence "based on factual assumptions not apparent from the record." Appellant's Opening Brief at 13. In particular, he asserts Judge Krieger found Judge Miller intended that Garcia-Ruiz serve a longer sentence than Roberto Lopez and then relied on that finding in reimposing a 180-month sentence of imprisonment on remand. In support of this argument, Garcia-Ruiz quotes the following portion of the sentencing transcript: "Judge Miller had at the time of sentencing of Mr. Garcia-Ruiz and Mr. Roberto Lopez two individuals who went through trial, and he presumptively fashioned a sentence that took in to account all of the 3553(a) factors, and he concluded that Mr. Garcia Ruiz's sentence should be longer that than of Roberto Lopez."

Having reviewed the entire sentencing transcript, this court has no doubt the district court did not commit the error Garcia-Ruiz attempts to attribute to it.[3] Instead, the record reveals Judge Krieger arrived at Garcia-Ruiz's 180-month sentence after independently evaluating all of the factors set out in § 3553(a).

---

[3]There is serious reason to doubt whether Garcia-Ruiz preserved this issue. The district court gave the parties multiple opportunities to object or seek clarification and Garcia-Ruiz merely offered up a general objection to the length of the sentence at the close of the sentencing hearing. This is particularly true because unlike the second issue Garcia-Ruiz raises on appeal—whether the district court erred in refusing to consider the Camacho brothers as comparators in considering the need to avoid unwarranted sentencing disparities—this issue was not presented to the district court in a sentencing memorandum or during the sentencing hearing. Nevertheless, because we conclude the district court did not err, we need not resolve whether our review is limited to plain error.

Judge Krieger first noted she had reviewed the entire record in anticipation of the sentencing hearing. Then, after having listened to the parties' arguments, she explicitly stated that in arriving at an appropriate sentence, she considered the factors set out in § 3553(a). She noted the appropriate starting point was Garcia-Ruiz's correctly calculated advisory guidelines range of 292 to 365 months' imprisonment. Nevertheless, Judge Krieger recognized the parties agreed a non-guideline sentence was necessary to "avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Having fully ventilated the sentencing disparity issue, she decided a sentence of 180 months' imprisonment was appropriate, the same sentence Judge Miller previously imposed.

Despite Judge Krieger's explicit statement that she reviewed the entire record and considered each of the sentencing factors set out in § 3553(a) in arriving at an appropriate sentence,[4] Garcia-Ruiz claims she selected a sentence based on factual assumptions about Judge Miller's sentencing determination not apparent from the record. These "unwarranted assumptions," he further asserts,

_____

[4]Judge Krieger's explicit statement that she "took into account" the factors set out in § 3553(a) is generally sufficient to demonstrate procedural reasonableness in a circumstance like this as a district court is not required "to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." *United States v. Cordova*, 461 F.3d 1184, 1189 (10th Cir. 2006) (quotation omitted).

served as a basis for Judge Krieger's sentence. Garcia-Ruiz's assertion in this regard is not borne out when the portion of the sentencing transcript he identifies is read in the context of the entire sentencing hearing. The transcript, as quoted at length above and specifically including the portion identified by Garcia-Ruiz, surely reveals Judge Krieger took comfort from the fact her independent application of the § 3553(a) sentencing factors led to the same sentence Judge Miller previously imposed. No one, however, could reasonably read the transcript as indicating Judge Krieger set about to determine and impose the sentence Judge Miller would have imposed had he not retired. That being the case, the district court did not commit the error identified by Garcia-Ruiz.[5]

## B. Constrained Analysis of Sentencing Disparities

Garcia-Ruiz asserts the district court erred when it refused to consider any sentencing disparities it determined were warranted by a codefendant's acceptance of responsibility or substantial assistance. In so arguing, Garcia-Ruiz cites to the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 54 (2007), and this court's decision in *United States v. Smart*, 518 F.3d 800, 810

---

[5]It is worth emphasizing that when this court vacated Garcia- Ruiz's sentence on direct appeal, we recognized the possibility that on remand the already lenient sentence of 180 months' imprisonment would not change. *See Garcia-Ruiz*, 421 F. App'x at 913. Thus, although Garcia-Ruiz vigorously asserts he is entitled to an even more lenient sentence and Judge Krieger's failure to so sentence him must be based on error, it is not surprising Judge Krieger arrived at a sentence identical to the sentence previously imposed by Judge Miller.

(10th Cir. 2008). Although we doubt these cases stand for the proposition that a sentencing court is free to ignore entirely warranted disparities in imposing sentences on codefendants, we need not resolve that issue because Garcia-Ruiz's argument suffers from a far more fundamental flaw. Even assuming sentencing courts have the broad power Garcia-Ruiz asserts (i.e., to arbitrarily treat dissimilar codefendants similarly), he has not identified a single case indicating a failure to exercise that power amounts to a legal error. Instead, as this court has previously indicated in a non-precedential decision, a sentencing "court surely acts within it discretion when it declines [to consider the possibility of unwarranted disparities or even warranted similarities and instead] adheres to the text of § 3553(a)."). *United States v. Rojas-Hernandez*, 274 F. App'x 624, 629 (10th Cir. 2008)[6]; *see also United States v. Caldwell*, 585 F.3d 1347, 1355-56 (10th Cir. 2009) (holding that mere fact district court had discretion to vary downward based on crack/powder disparity did not mean district court was obligated to do so). Thus, the district court did not commit procedural error when it refused to consider warranted sentencing disparities in arriving at Garcia-Ruiz's sentence.[7]

---

[6]Although this panel is not bound by the decision in *Rojas-Hernandez*, we find its analysis persuasive and adopt it as our own. 10th Cir. R. 32.1.

[7]In his reply brief, Garcia-Ruiz contends for the first time that rather than exercising its discretion, the district court "found as a legal matter that it was unable to consider the sentences of most of Garcia-Ruiz's codefendants."

(continued...)

-15-

**IV. CONCLUSION**

For those reasons set out above, the sentence imposed by the United States

District Court for the District of Colorado is hereby **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[7](...continued)
Appellant's Reply Brief at 15. Garcia-Ruiz's argument in this regard, which is
again based on a portion of the sentencing transcript read out of context, borders
on disingenuous. The sentencing transcript, read as a whole, clearly demonstrates
the district court considered divergent "schools of thought" on how to best
account for § 3553(a)(6) in arriving at a sentence and decided the appropriate
approach was to "generally take into account those circumstances that
differentiate defendants and decide whether or not they should result in sentence
disparities."