**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

DAUD ANWAR,

     Defendant - Appellant.

No. 13-2015

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 2:12-CR-00586-RB-1)**

Robert E. Kinney, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of New Mexico, Las Cruces, New Mexico, appearing for Appellant.

Marisa A. Lizarraga, Assistant United States Attorney (Kenneth J. Gonzales, United States Attorney with her on the brief), Office of the United States Attorney for the District of New Mexico, Las Cruces, New Mexico, appearing for Appellee.

Before **KELLY**, **HARTZ** and **MATHESON**, Circuit Judges.

**MATHESON**, Circuit Judge.

     Daud Anwar pled guilty to making false threats to destroy buildings in violation of

18 U.S.C. § 844(e). The district court sentenced him to 24 months in prison and three

years of supervised release. Mr. Anwar appeals only the four-level sentence enhancement he received under the United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") for causing a "substantial disruption" to public "functions or services." U.S.S.G. § 2A6.1(b)(4)(A). Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

On March 3, 2011, Mr. Anwar was an engineering student at New Mexico State University ("NMSU"). Seeking to avoid sitting for an important test, Mr. Anwar sent two emails and made four phone calls in which he falsely threatened to detonate explosives at various NMSU campus locations. The two emails—one to the university's president and the other to its deputy chief of police—remained unread until after the threatened detonation time had passed. Mr. Anwar's phone call to the Information and Campus Technology Building was quickly determined to be a hoax, and the building was not evacuated. Similarly, his phone calls to the Activities Center and the NMSU Police Department Dispatch also did not result in any evacuations.

Mr. Anwar's phone call to Thomas and Brown Hall, NMSU's engineering building, engendered a greater response. Mr. Anwar made the following statement three times to the employee who answered the phone: "If you don't want anyone hurt, you'll get everyone out of the building—it will detonate at 10:30 a.m." The employee called the NMSU police department and the associate dean of engineering. The dean instructed her to activate the fire alarm. Six NMSU police officers and six firefighters arrived to

-2-

sweep the building for explosives. During the sweep, 240 people were evacuated and 14 classes were interrupted. Afterward, NMSU's Information and Campus Technology ("ICT") Department conducted a two-day investigation that helped identify Mr. Anwar as a suspect.

On March 21, 2012, a federal grand jury indicted Mr. Anwar on one count of making threats by mail, telephone, or other instruments, in violation of 18 U.S.C. § 844(e). He pled guilty to the charge on April 30, 2012. The Presentence Investigation Report ("PSR") placed Mr. Anwar in criminal history category III and assigned him a total offense level of 15. The latter included a four-level enhancement pursuant to U.S.S.G. § 2A6.1(b)(4)(A) for making false threats that resulted in "substantial disruption of public, governmental, or business functions or services."

Mr. Anwar objected to the four-level increase, but on January 22, 2013, the district court issued an order overruling that objection. Recognizing that the Tenth Circuit has yet to interpret U.S.S.G. § 2A6.1(b)(4)(A), the district court relied mainly on *United States v. Dudley*, 463 F.3d 1221 (11th Cir. 2006), which affirmed a four-level enhancement under § 2A6.1(b)(4)(A) for a false anthrax threat that disrupted fewer people than in the present case. Mr. Anwar now appeals the district court's order.

## II. DISCUSSION

### A. *Standard of Review*

We review sentencing decisions for "reasonableness under a deferential abuse-of-discretion standard." *United States v. Begaye*, 635 F.3d 456, 461 (10th Cir. 2011); *see*

-3-

*also Gall v. United States*, 552 U.S. 38, 46 (2007). "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008) (citing *Gall*, 552 U.S. at 51). Because Mr. Anwar disputes only the applicability of a sentencing enhancement to his Guidelines offense level, he challenges only the procedural reasonableness of his sentence.

Procedural reasonableness "requires, among other things, a properly calculated Guidelines range." *United States v. Mollner*, 643 F.3d 713, 714 (10th Cir. 2011). "When reviewing the district court's calculation of the guidelines, 'we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts.'" *United States v. Halliday*, 665 F.3d 1219, 1222-23 (10th Cir. 2011) (quoting *Mollner*, 643 F.3d at 714).

We view Mr. Anwar's appeal as a challenge to the district court's application of the Guidelines to the facts, which receives "due deference" review under our precedent. *Halliday*, 665 F.3d at 1222-23. The Government does not appear to challenge Mr. Anwar's assertion that the district court's decision should be reviewed de novo. We reach the same outcome under de novo or deferential review.

### B.  *U.S.S.G. § 2A6.1(b)(4)(A) and "Substantial Disruption"*

This case requires us to review for the first time the application of U.S.S.G. § 2A6.1(b)(4)(A), which calls for a four-level sentence enhancement "[i]f the offense resulted in . . . substantial disruption of public, governmental, or business functions or services." The Guidelines Manual provides no definition of "substantial disruption" or

-4-

"functions or services," and offers no other direction regarding this provision's application.

1. **Plain Language**

To understand and apply § 2A6.1(b)(4)(A), we initially "look at the language in the guideline itself." *United States v. Robertson*, 350 F.3d 1109, 1112 (10th Cir. 2003). As our discussion of the cases applying "substantial disruption" indicates, the words in the guideline are used consistently with their common dictionary definitions.

"Substantial" is typically defined to mean considerable in amount, quantity, or degree. *See, e.g.*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1738 (5th ed. 2011) (defining "substantial" as "[c]onsiderable in importance, value, degree, amount, or extent"); 17 THE OXFORD ENGLISH DICTIONARY 67 (2d ed. 1989) (defining "substantial" as "[o]f ample or considerable amount, quantity, or dimensions"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (1976) (defining "substantial" as "considerable in amount, value, or worth").

Dictionaries generally define "disruption" as an action that interrupts, impedes, or stops. *See, e.g.*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 522 (5th ed. 2011) (including "disruption" under "disrupt," which is defined as "[t]o throw into confusion or disorder" or "[t]o interrupt or impede the progress of"); 4 THE OXFORD ENGLISH DICTIONARY 833 (2d ed. 1989) (defining "disruption" as "[t]he action of rending or bursting asunder; violent dissolution of continuity; forcible severance"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 656 (1976) (defining "disruption"

as "the state of being disrupted," and defining "disrupt" as "to interrupt to the extent of stopping, preventing normal continuance of, or destroying").

The phrase "substantial disruption of . . . functions or services" therefore suggests a significant interruption of normal activities when measured by scope and time. *See Dudley*, 463 F.3d at 1226 (describing the scope and time of interruption to courthouse activity resulting from defendant's threat). Additionally, the enhancement applies "if the offense *resulted in* . . . substantial disruption of public, governmental, or business functions or services." U.S.S.G. § 2A6.1(b)(4)(A) (emphasis added). The phrasing of this provision focuses on the outcome of the threat, not the defendant's intent.

Although the meaning of "substantial disruption" is clear, it is nonetheless a relative term, a matter of degree. We therefore seek guidance from pertinent cases to determine whether the disruption in this case was substantial under § 2A6.1(b)(4)(A).

2. **Case Law Applying § 2A6.1(b)(4)(A)**

Only the Ninth and Eleventh Circuits have published cases addressing § 2A6.1(b)(4)(A).[1] Both affirmed enhancements for "substantial disruption[s]."

The facts of the Ninth Circuit case, *United States v. Mohamed*, 459 F.3d 979 (9th Cir. 2006), easily established a substantial disruption. The defendant made a telephone

---

[1] An unpublished Tenth Circuit case, *United States v. Wyrick*, 416 F. App'x 786 (10th Cir. 2011) (unpublished), involved a district court's decision to sustain the defendant's objection to a sentence enhancement under § 2A6.1(b)(4)(A) after concluding that the "substantial disruption" requirement was not met. *Wyrick*, 416 F. App'x at 790. The *Wyrick* court did not, however, reexamine the issue on appeal.

call from Calgary, Canada to the Department of Homeland Security and knowingly provided a false tip that terrorists planned to bomb several shopping malls close to a federal building in Los Angeles. *Id.* at 981-82. Multiple law enforcement agencies—including the FBI Joint Terrorism Task Force, four divisions of the Los Angeles Police Department ("LAPD"), the Los Angeles County Sherriff's Department, the California Highway Patrol, the United States Border Patrol, and the Royal Canadian Mounted Police—and the Los Angeles City Fire Department investigated the threat and provided security. *Id.* Various media outlets broadcast news of the threat, and the LAPD distributed flyers warning local businesses about the purported impending attack. *Id.* As a result, on that day businesses "at or near" the affected shopping mall suffered an estimated 65 to 85 percent decrease in sales. *Id.* The Ninth Circuit held there was "ample evidence" supporting the sentence enhancement for "substantial disruption" under § 2A6.1(b)(4)(A). *Id.* at 988.

In the Eleventh Circuit case, *United States v. Dudley*, 463 F.3d 1221 (11th Cir. 2006), the defendant mailed a judge an envelope containing white powder that purported to be anthrax. *Id.* at 1224. The false threat forced half of a state courthouse floor to close for two hours. Two people exposed to the letter were quarantined. *Id.* at 1226. Court proceedings of two judges were interrupted for several hours, and the judge who received the letter had to spend "many hours" discussing the case with law enforcement. *Id.* An officer provided her around-the-clock security through the following day. *Id.* Applying de novo review, the Eleventh Circuit concluded that the disruption resulting from the

defendant's threats justified the four-level enhancement under § 2A6.1(b)(4)(A). *Id.* at 1225-26.

Both *Mohamed* and *Dudley* measured substantial disruption by considering objectively quantifiable effects produced by the defendants' false threats.[2]

### 3. Tenth Circuit Cases Applying U.S.S.G. § 2J1.3(b)(2)

Without the benefit of cases addressing § 2A6.1(b)(4)(A), the *Dudley* court found assistance from other circuit decisions applying § 2J1.3(b)(2), which calls for a three-level enhancement if the offense of perjury or bribery of a witness "resulted in substantial interference with the administration of justice." U.S.S.G. § 2J1.3(b)(2); *Dudley*, 463 F.3d at 1226. The Application Notes for this provision state that "[s]ubstantial interference with the administration of justice" includes "the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.3 n.1.

Two Tenth Circuit cases have reviewed sentence enhancements under

---

[2] The various unpublished cases that have applied § 2A6.1(b)(4)(A) have likewise affirmed "substantial disruption" enhancements by relying on objectively quantifiable effects produced by defendants' threats. *See United States v. Sanders*, 511 F. App'x 463, 466 (6th Cir. 2013) (unpublished) (roughly 40 Coast Guard personnel, including air and land units, searched about ninety miles of lake coastline); *United States v. Tucker*, 468 F. App'x 610, 611 (6th Cir. 2012) (unpublished) (bomb threat completely shut down Blue Cross Blue Shield's downtown headquarters in the middle of a business day, causing $558,000 in losses); *United States v. Kirkpatrick*, 385 F. App'x 610, 612 (7th Cir. 2010) (unpublished) (law enforcement agencies spent 200 person-hours on an unnecessary investigation); *United States v. Snipes*, 466 F. App'x 800, 802 (11th Cir. 2012) (unpublished) (threat to shoot National Guard members at a weekend drill required several senior officers in the National Guard to determine how to respond and reassignment of at least 30 soldiers to provide additional security).

§ 2J1.3(b)(2), addressing whether the defendants' perjury caused "substantial interference with the administration of justice." In *United States v. Smith*, 531 F.3d 1261 (10th Cir. 2008), we affirmed a § 2J1.3(b)(2) sentence enhancement where, as a result of the defendant's perjury, the government was forced to provide the defendant with guarded transportation from Memphis to Oklahoma City for an unnecessary hearing. *Id.* at 1270-71. In *United States v. Sinclair*, 109 F.3d 1527 (10th Cir. 1997), the defendant's perjury forced the prosecution to re-interview and recall two key witnesses. *Id.* at 1540. In affirming the district court's application of the enhancement, we held that the Government "need not particularize a specific number of hours expended by government employees in order to support the U.S.S.G. § 2J1.3(b)(2) enhancement." *Id.* (quotations omitted). [3]

Our application of "substantial interference" in these cases is consistent with the approach we follow here, which assesses the scope and time of the disruption at issue.

---

[3] Enhancements under this provision have been affirmed under a wide range of factual situations. *See, e.g.*, *United States v. Leung*, 360 F.3d 62, 67-68 (2d Cir. 2004) (cost of interviewing numerous witnesses and time spent consulting with various agencies where the defendant faked his own death to avoid prosecution was substantial); *United States v. Gray*, 692 F.3d 514, 522-23 (6th Cir. 2012) (falsifying of documents contributing to four-year trial delay and making investigation more difficult substantially interfered with administration of justice); *United States v. Tankersley*, 296 F.3d 620, 623 (7th Cir. 2002) (resources expended in multi-week investigation to find and secure various assets, including proceeds from the sale of a yacht, were substantial); *United States v. Alwan*, 279 F.3d 431, 436-37, 440 (7th Cir. 2002) (interference with the administration of justice caused by defendant's refusal to testify before the grand jury on four separate occasions was substantial); *see also United States v. Atlantic States Cast Iron Pipe Co.*, 627 F. Supp. 2d 180, 203-04 (D.N.J. 2009) (collecting cases).

4. **Summary**

The plain language of § 2A6.1(b)(4)(A) and the case law reviewed above direct us to analyze whether normal "public, governmental, or business functions or services" were significantly interrupted or impeded as a result of a defendant's false threat. U.S.S.G. § 2A6.1(b)(4)(A). This analysis involves consideration of objectively quantifiable effects, such as the extent to which the false threat interrupted or impeded normal activity and the amount of time the interruption lasted. *See Dudley*, 463 F.3d at 1226; *Mohamed*, 459 F.3d at 982.

## C. *Analysis*

We must determine whether the district court erred in concluding that Mr. Anwar's threats resulted in a "substantial disruption of [NMSU] functions or services."[4] U.S.S.G. § 2A6.1(b)(4)(A). We consider the 240 people in Thomas and Brown Hall whose activities, including 14 classes, were interrupted, as well as the various NMSU employees—including police and fire department officials—who suspended their regular duties to respond to Mr. Anwar's threats.

Mr. Anwar contends that the disruption resulting from his threat was less substantial than the cases cited by the district court. In particular, he argues that the

---

[4] Mr. Anwar does not argue that his false bomb threat—which targeted a state university, displaced student and faculty, and diverted public safety employees—did not implicate "public . . . functions or services," U.S.S.G. § 2A6.1(b)(4). Mr. Anwar contends only that his false threat did not cause a "substantial disruption" of these functions or services under the Guidelines. *See* Aplt. Br. at 7.

district court's reliance on *Dudley* was misplaced because that case involved a "qualitatively different" disruption from the present case. Aplt. Br. at 12. He argues that the letter in *Dudley* claiming to contain anthrax was "terrifying" and "extremely upsetting" to those threatened and to the judge's family, and, in contrast, there is no evidence in this case that the people evacuated from Thomas and Brown Hall were aware of why the fire alarm was activated. *Id.* at 11-12. He asserts they therefore perceived the evacuation as a routine event that "did not provoke the kind of extreme emotional response that the supposed anthrax involved in *Dudley* surely did." *Id.* at 12.

The plain language of § 2A6.1(b)(4)(A) makes the emotional or psychological impact of a threat relevant only to the extent it affects the substantiality of the disruption to functions or services. Indeed, even though the *Dudley* court mentioned the emotional impact of the false threat on the judge's daughter, *see Dudley*, 463 F.3d at 1224-25, the court did not discuss this detail when it applied the guideline to the facts of the case, *see id.* at 1226.[5] This leaves us to compare the degree of objectively quantifiable disruption in the two cases.[6]

_____

[5] Although the emotional impact of the threat on the judge's daughter was no doubt traumatic, that impact had no demonstrable relation to the interruption of public functions or services, which likely explains its absence from the court's application of the guideline.

[6] Mr. Anwar contends that "[u]nless the 'substantial disruption' enhancement has a qualitative aspect to it, it will necessarily be applied to practically every case involving a false bomb threat communicated to any public, governmental or business entity." Aplt. Reply Br. at 2. The facts of Mr. Anwar's case illustrate otherwise. As Mr. Anwar

Continued . . .

In making this comparison, we acknowledge, as Mr. Anwar observes, that certain details regarding the substantiality of the disruption were not specified before the district court. In particular, the record does not identify how long the evacuation and sweep of Thomas and Brown Hall lasted, whether the affected classes had to be cancelled, how many people from NMSU's ICT department were involved in the two-day investigation, or how much time during the two-day period was actually spent on the investigation.

Nevertheless, the uncontested facts were sufficient to show substantial disruption. Mr. Anwar's false threat to detonate a bomb at Thomas and Brown Hall shut down an entire building, causing the evacuation of 240 people and the interruption of 14 classes.[7] The threat diverted various NMSU employees and police officers from their regular duties. Six police officers and six NMSU firefighters swept Thomas and Brown Hall searching for explosives before anyone could reenter the building. Campus authorities spent the next two days investigating before identifying Mr. Anwar as the suspect.

In *Dudley*, half of a courthouse floor was closed down for two hours. *Dudley*, 463 F.3d at 1226. Two people were quarantined. *Id.* Two judges' work was interrupted for

himself acknowledges, of his six bomb threats (four via telephone and two via email), "[t]he only threat . . . that actually did provoke any significant response was a call to the Systems and Signals Building [Thomas and Brown Hall]," Aplt. Br. at 2.

[7] In the context of school speech, we have recognized that expression that interrupts classroom instruction or otherwise disrupts the learning environment may constitute a "substantial disruption." *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 38 (10th Cir. 2013); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969); *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1204-05 (10th Cir. 2002).

several hours, and one of the judges had to spend "many hours" afterward discussing the case with investigators. *Id.* Additionally, an officer provided that judge with around-the-clock security detail for more than 24 hours. *Id.*

When we consider the number of people affected and the extent of the interruption in this case, the substantiality of the disruption to functions or services may have been less than the disruption in *Mohamed* but was comparable to *Dudley*. Substantial disruption occurred in all three cases. We agree with the district court that *Dudley* helps demonstrate that Mr. Anwar's bomb threats resulted in substantial disruption within the meaning of U.S.S.G. § 2A6.1(b)(4)(A). The facts demonstrate an interruption to NMSU functions and services that was significant in scope and length. We conclude that the district court did not err in determining that Mr. Anwar's threats resulted in a substantial disruption under § 2A6.1(b)(4)(A).

### III. **CONCLUSION**

For the foregoing reasons, we affirm the district court's order overruling Mr. Anwar's objection to the § 2A6.1(b)(4)(A) four-level sentence enhancement and affirm the district court's sentence set forth in the judgment in this case.