RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0217p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-1465

MICHAEL LEE BOURQUIN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:18-cr-20510-1—Thomas L. Ludington, District Judge.

Argued: December 3, 2019

Decided and Filed: July 17, 2020

Before: GRIFFIN, STRANCH, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Michael J. Freeman, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

BERNICE BOUIE DONALD, Circuit Judge. Defendant-Appellant Michael Bourquin seeks an order from this Court reversing the district court's application of a four-level enhancement, pursuant to United States Sentencing Guidelines Manual § 2A6.1(b)(4), for

offense conduct resulting in a substantial expenditure of government funds. The district court applied the enhancement even though the government did not introduce any accounting of funds expended. Because we conclude that § 2A6.1(b)(4)(B) requires more, such as a full accounting of expenditures or some accounting of expenditures coupled with facts that allow a sentencing court to reasonably assess the full expenditure of funds required to respond to an offense and whether those funds are substantial, we vacate the sentence imposed by the district court and remand for resentencing consistent with this opinion.

I.

The following undisputed facts are taken from the underlying presentence report ("PSR"). On August 8, 2017, Bourquin called the Federal Bureau of Investigation ("FBI") public access line in West Virginia to report a fabricated story about a planned crime. He identified himself as a retired police officer, a twenty-year veteran of the Royal Oak Township Police Department, and a convicted sex offender who served a term of incarceration at the Southern Michigan Correctional Facility in Jackson, Michigan. Bourquin told the FBI that he was walking his neighbor's dog when an individual he knew as Raymond approached him. According to Bourquin, he and Raymond were incarcerated together, and he tutored Raymond and helped him with his release paperwork. Bourquin claimed Raymond was a part of the Outlaw Motorcycle Club ("OMC").

Bourquin said Raymond started telling him about a plot to abduct, rape, sodomize, and set on fire a former federal prosecutor for the Eastern District of Michigan named B.M. Bourquin stated that Raymond told him the OMC had B.M.'s schedule because she taught at the University of Michigan, and that the kidnapping would take place two days later on August 10, 2017. According to Bourquin's story, the "hit" came from Harry "Taco" Bowman, the OMC's leader, who was in federal custody serving a life sentence for a Racketeer Influenced and Corrupt Organizations Act offense. Bourquin indicated Raymond felt comfortable sharing these details because Bourquin helped him so much while he was incarcerated. Bourquin reported that he then ended the conversation, returned his neighbor's dog, went back to his condo, and eventually called the FBI.

Upon receiving the recording of Bourquin's call, FBI employees spent several hours transcribing, reviewing, and correcting the transcript. FBI agents then immediately had Bowman placed into segregation and suspended his telephone calls, mail, and visitation. Correction officers from the United States Bureau of Prisons in Butner, North Carolina, spoke with FBI agents and confirmed they were aware of Bowman and his OMC leadership status. The corrections officers confirmed that they already monitor Bowman's mail and telephone calls very closely due to circumstances surrounding his incarceration but that they had no information to corroborate Bourquin's story. On August 9, 2017, the day after receiving Bourquin's false tip, FBI agents from the local Raleigh, North Carolina office traveled to the Federal Correctional Institute in Butner to interview Bowman about the possible threat against B.M. Bowman acknowledged his OMC membership but said he had never heard of B.M., had never had any interaction with B.M. (as his case originated out of, and was strictly handled by, the Middle District of Florida), and was still going through the appeals process. Bowman denied having any information regarding a threat against B.M. and did not know why someone would say he was a threat to her.

Meanwhile, the FBI notified the United States Marshals Service about the threat to B.M., and the Marshals Service deployed a team of deputy marshals to B.M.'s residence to provide twenty-four-hour surveillance. The FBI also coordinated security measures for B.M. and her family with the Ann Arbor and University of Michigan Police Departments.

The FBI also contacted the Michigan Department of Corrections ("MDOC") to identify the person named "Raymond," who Bourquin alleged communicated the threat and had been previously incarcerated with him at MDOC. According to the government, the FBI and MDOC identified over 600 inmates with the name "Raymond" and sought to determine whether any met Bourquin's description.

Also on August 9, 2017 (the day after Bourquin's call), FBI agents traveled from approximately one hour and thirty minutes away to meet with and interview Bourquin. Bourquin told his story and went over the route he claimed to have taken before meeting with Raymond. Agents reviewed the route and pulled video footage from a local business in the exact area where Bourquin said he spoke with Raymond. The footage did not show Bourquin or Raymond.

Agents went back to Bourquin's residence and spoke with him again about the exact time and spot where he met with Raymond.  Bourquin reiterated he was certain about the time and spot, but agents could not locate the two on any video footage.

Bourquin consented to a polygraph test.  The agents transported Bourquin to the closest polygraph examiner three hours away where the examiner administered a polygraph test from approximately 10:45 p.m. until 2:30 a.m.  After the polygraph test indicated that Bourquin had fabricated his story, Bourquin admitted to lying.  According to Bourquin, he made the story up because he is a retired police officer and "wanted to be one of the good guys."

On July 26, 2018, the government filed a one-count information charging Bourquin with maliciously conveying false information concerning an attempt to kill, injure or intimidate B.M. by means of fire, in violation of 18 U.S.C. § 844(e).  On January 4, 2019, Bourquin pleaded guilty to the charges without a plea agreement.  Following Bourquin's guilty plea, the United States Probation Office prepared a PSR recommending that the district court apply a four-level enhancement under U.S.S.G. § 2A6.1(b)(4), based on either of the following criteria: "(A) substantial disruption of public, governmental, or business functions or services; or (B) a substantial expenditure of funds to . . . otherwise respond to the offense."  Each party filed a sentencing memorandum.  Bourquin objected to the recommended enhancement, and in response, the government described the investigative steps that law enforcement took based on Bourquin's false threat report and argued that these steps amounted to more than just a typical investigation and required a substantial expenditure of funds.

During the sentencing hearing on April 25, 2019, after the parties reiterated their arguments previously submitted in their sentencing memoranda, the district court overruled Bourquin's objection to the enhancement.  The court reasoned that although there was "no specific accounting on the associated costs of the Government activity that followed Mr. Bourquin's telephone call to the FBI's center[,] . . . the investigation was obviously prompt" and "involved a significant number of agents . . . not only in Ann Arbor but also in northern Michigan."  The court also relied on the evidence showing that "[t]he United States Marshal[s] Service . . . coordinated to place 24/7 surveillance on the target as well as family members, and there were separate efforts that had to be coordinated with the [MDOC], all leading ultimately to

a polygraph examination." Thus, the court found that, "[w]hile one cannot immediately put a dollar figure on it, it's clear that there were days and days of total manpower invested in the effort." Hence, the court applied the four-level enhancement.

Bourquin's Guideline range was calculated at 37 to 46 months, and the district court sentenced him to 40 months' imprisonment, followed by two years of supervised release. Bourquin timely appealed.

Bourquin appeals the district court's decision to apply the four-level enhancement under § 2A6.1(b)(4)(B).

## II.

"[W]e . . . review a district court's calculation of the advisory sentencing Guidelines as part of our obligation to determine whether the district court imposed a sentence that is procedurally unreasonable." *United States v. Bullock*, 526 F.3d 312, 315 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "We review a district court's 'legal conclusions regarding application of the [g]uidelines de novo' and any findings of fact for clear error." *United States v. Oliver*, 919 F.3d 393, 397 (6th Cir. 2019) (alteration in original) (quoting *United States v. Holcomb*, 625 F.3d 287, 291 (6th Cir. 2010)). The same de novo standard applies when a district court's application of the Guidelines involves mixed questions of law and fact. *United States v. Stafford*, 721 F.3d 380, 400 (6th Cir. 2013).

## III.

## A.

Section 2A6.1(b)(4) of the United States Sentencing Guidelines, regarding specific offense characteristics, states that if an offense results in "(A) substantial disruption of public, governmental, or business functions or services; or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense, increase by 4 levels." The district court limited its focus to subsection (B), and that is the only subsection we consider on appeal.

Bourquin contends that the government failed to present sufficient evidence to support the court's four-level enhancement of his sentence under § 2A6.1(b)(4) as it submitted no

evidence on any expenditure of funds or proof that such expenditure was substantial.  According to Bourquin, for an expenditure to be "substantial" it must be more than what is spent in an average case.  He states that he confessed within 24 hours, that officers knew the threat was fake within 24 hours, and that the government's sentencing memorandum referencing "numerous agents" and the involvement of different states in the investigation is not enough to support the district court's ruling.   The government, on the other hand, posits that its sentencing memorandum and the PSR sufficiently supported the § 2A6.1(b)(4)(B) enhancement by showing that the government expended substantial funds in providing an immediate, multi-agency response to Bourquin's false threat report.

Bourquin's position finds support in the enhancement's text and our understanding of the government's burden.  The relevant subsection requires proof of a "substantial expenditure of funds," § 2A6.1(b)(4)(B), and the government bears the burden of proving that an enhancement applies by a preponderance of the evidence.  *United States v. Byrd*, 689 F.3d 636, 640 (6th Cir. 2012).   "[D]ue process requires that some evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing." *United States v. Silverman*, 976 F.2d 1502, 1504 (6th Cir. 1992) (emphasis omitted) (quoting *United States v. Smith*, 887 F.2d 104, 108 (6th Cir. 1989)).  The government, however, failed to introduce any evidence about the money it spent to respond to Bourquin's offense.  Therefore, it did not, and could not, meet its burden of proving a "substantial expenditure of funds."  Even if the government demonstrated that it expended some amount of funds, the government failed to offer proof that any expenditure of funds qualified as "substantial" rather than typical.  As the Seventh Circuit explained in *United States v. Kirkpatrick*, 385 F. App'x 610 (7th Cir. 2010), a case analyzing what constitutes a "substantial disruption of . . . functions or services" under subsection § 2A6.1(b)(4)(A), "[h]ow much disruption of governmental activity is 'substantial' is a matter of degree." *Id.* at 612.  Although "[d]istrict judges have discretion about how to handle open-ended concepts" including how to apply undefined Guideline terms like "substantial," *id.*, the Court must rely on evidence and not speculation to decide whether the degree of an expenditure of funds qualifies as "substantial," *see Byrd*, 689 F.3d at 640 ("[T]he government bears the burden to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies.").

To our knowledge, no other court has allowed a § 2A6.1(b)(4)(B) enhancement to stand without either a full accounting of expenditures or some accounting of expenditures coupled with facts that allow the sentencing court to sufficiently assess the full expenditure of funds required to respond to an offense and whether those funds are substantial. In *United States v. Nissen*, the United States District Court for the District of New Mexico declined to apply § 2A6.1(b)(4)'s four-level enhancement because the government failed to introduce any evidence of expenditures. No. CR 19-0077 JB, 2020 U.S. Dist. LEXIS 97809, at *54-57 (D.N.M. June 3, 2020). In *United States v. Devaughn*, the United States District Court for the District of Colorado held that a four-level enhancement under § 2A6.1(b)(4)(B) applied because, "[a]lthough the government failed to submit verified expenses for each of the thirteen counts until the day of sentencing," the government submitted verified expenses of $3,236.06 for one of thirteen letters the defendant filled with white powder and mailed to several politicians and foreign consulates across the United States. Nos. 10-cr-00132-JLK, 10-cr-00254-JLK, 10-cr-00379-JLK, 2011 U.S. Dist. LEXIS 8466, at *1-3, 10-11 (D. Colo. Jan. 28, 2011). From this partial accounting, the district court could draw an inference about the costs associated with all thirteen white powder envelopes. *Id.* at *11.

Considering § 2A6.1(b)(4)(B)'s text and the government's burden of proof together with cases analyzing the enhancement, we conclude that to demonstrate the applicability of subsection (B), the government must introduce a full accounting of expenditures or some accounting of expenditures coupled with facts allowing the court to reasonably assess the expenditure of funds required to respond to an offense and whether those funds are substantial.

In the absence of on point case law favorable to its position, the government attempts to analogize the application of § 2A6.1(b)(4)(B) to the application of U.S.S.G. § 2J1.3(b)(2), which provides a three-level enhancement for certain conduct resulting in an interference with the administration of justice. The government points to § 2J1.3(b)(2)'s Application Notes, which state that "'[s]ubstantial interference with the administration of justice' includes . . . the unnecessary expenditure of substantial governmental or court resources." *See* U.S.S.G. § 2J1.3 app. n.1.

The government then cites two Sixth Circuit cases—*United States v. Jarrar*, 99 F. App'x 726 (6th Cir. 2004), and *United States v. Tackett*, 193 F.3d 880 (6th Cir. 1999)—which upheld enhancements under § 2J1.3(b)(2) without requiring the government to provide the particularized number of hours expended to respond to offense conduct. The government's analogy, however, misses the mark because *Jarrar* and *Tackett* answered whether there was an unnecessary expenditure of substantial government *resources* (*e.g.*, time or money, *Tackett*, 193 F.3d at 887), as opposed to a substantial expenditure of *funds*. Efforts by law enforcement in conducting a multi-agency response over a period of time to prevent or investigate a crime, though perhaps evidencing the expenditure of resources, does not inherently and sufficiently evidence a substantial expenditure of funds to respond to an offense under § 2A6.1(b)(4)(B). The government does not point to, and this Court does not find, any case law to the contrary. Thus, we find that § 2A6.1(b)(4)(B) requires a complete accounting of funds expended or some evidence of government expenditures coupled with facts that reasonably allow the court to assess the full expenditure of funds required to respond to an offense and whether those funds are substantial. Whether the funds are substantial, similar to a showing of a substantial expenditure of government or court resources under § 2J1.3(b)(2), may be determined by making a common-sense weighing of the totality of the government actions in conjunction with some showing of the expenditure of funds. Here, however, the government has failed to present any evidence of the expenditure of funds, meaning the court lacked an opportunity to assess whether funds were expended, let alone weigh the degree of the spending.

The district court found that law enforcement's prompt investigation and coordination of efforts by multiple agents and agencies, in different places, amounted to days of total manpower, and was thus a sufficient basis for the § 2A6.1(b)(4)(B) enhancement. The district court did so, however, without any evidence of the amount of funds expended or other evidence allowing an assessment of the full expenditure of funds required to respond to Bourquin's offense and whether those funds are substantial. Despite stating that it could not put a dollar figure on the funds expended, the district court nonetheless surmised that a substantial amount was expended over the relatively short investigation and applied the enhancement. We find that, in doing so, the district court committed procedural error, as the government did not meet its burden of

showing, by a preponderance of the evidence, that there was a substantial expenditure of funds to respond to Bourquin's offense.

B.

Lastly, Bourquin asserts that, on remand, the Government should be precluded from presenting additional evidence to meet its burden in support of the § 2A6.1(b)(4)(B) enhancement. Such a "second bite at the apple," according to Bourquin, would improperly disregard that the government was on notice of his challenge to the enhancement but failed to present sufficient evidence in support thereof. *See United States v. Goodman*, 519 F.3d 310, 323 (6th Cir. 2008). The government responds that it should be afforded a limited remand to supplement the record with additional evidence. The government reasons that courts can provide the government with an additional opportunity to present evidence on remand if the government tenders a persuasive reason why fairness so requires.

We agree with Bourquin. The parties received notice of the four-level enhancement's potential application through the PSR. Admittedly, in his sentencing memorandum lodging objections to his PSR, Bourquin argued that there was not a substantial disruption of public, government, or business functions and said nothing about any expenditure of funds. Still, the government filed its own sentencing memorandum and argued that, even outside of Bourquin's disagreement as to a disruption of functions, Bourquin's offense still resulted in a substantial expenditure of funds. To make this showing, the government submitted the same facts and speculative arguments offered on appeal here. Moreover, when given a second opportunity at Bourquin's sentencing hearing to respond to Bourquin's arguments or state its position on the enhancement, the government merely summarized the contents of its sentencing memorandum. Ultimately, then, the government failed to meet its burden of sufficiently showing that there was a substantial expenditure of funds to respond to Bourquin's offense, despite the notice that Bourquin contested the § 2A6.1(b)(4) enhancement and despite two opportunities to argue the issue. We see no persuasive reason why fairness would require that the government be afforded another opportunity to prove that a substantial expenditure of funds occurred in response to Bourquin's offense. *See Goodman*, 519 F.3d at 323 (holding that where the Government failed

to establish that the defendant had used a firearm in connection with his crime, resentencing should be conducted based on the existing record).

IV.

Therefore, we vacate the sentence and remand for resentencing consistent with this opinion.